Herbster Unemployment Compensation Case.

Argued March 10, 1958. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*Horace J. Culbertson,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

*Stanley H. Siegel,* with him *Harry L. Siegel,* and *Siegel and Siegel,* for employer, intervening appellee.

OPINION BY RHODES, P. J., June 11, 1958:

This is an appeal by claimant from the decision of the Unemployment Compensation Board of Review affirming the referee and denying compensation on the ground that claimant's unemployment was due to voluntarily leaving work without cause of a compelling and necessitous nature within the meaning of section 402 (b) of the Unemployment Compensation Law, 43 PS §802 (b).[1]

Claimant had worked for the American Viscose Corporation since 1929, and was a member of the Textile Workers Union of America, C.I.O., which had a labor-management agreement with the employer. His last day of employment was September 24, 1954. Where there were displacements resulting from technological changes, the agreement provided: "Notices shall be posted in the department affected by an impending displacement, inviting such employees, as may desire, to surrender their seniority rights and rights to recall, in exchange for displacement wages. Such employees shall inform the head of that department of their decision within seven (7) days after posting of impending displacement lists." Accordingly, the employer posted a notice on August 10, 1954, stating that displacement wages would be offered to employes in claimant's department. The notice set forth:

---

[1] It was stipulated by counsel for the respective parties that the decision in this case shall be considered applicable to the following appeals: William M. Bender v. Unemployment Compensation Board of Review, No. 39, March Term, 1958; Marian Romig Soccio v. Unemployment Compensation Board of Review, No. 40, March Term, 1958.

"All employees so displaced may be paid a displacement wage which shall be in an amount equivalent to one week's pay for each full year of the employee's past continuous service with the Company.

"Any employees desiring to surrender their seniority rights and rights to recall in exchange for displacement wages may do so and are requested to so advise the head of their department of such decision. For each senior employee displaced and so applying, the Company will retain a junior employee who would otherwise have been displaced by this technological change."

Claimant, on September 23, 1954, gave written notice to the employer of his election to accept payment of a displacement wage as a technologically displaced employe. The sum of $1,675 was paid to claimant by the employer on October 7, 1954, as a result of claimant's election.

The bureau, referee, and board held claimant disqualified under section 402 (b) in that he elected to surrender his seniority rights and take the displacement wage of $1,675, and that by so doing he voluntarily left his employment without cause, as he could have remained employed by retaining his seniority rights.

We agree that claimant was ineligible for benefits under section 402 (b) of the Law, 43 PS §802 (b). It is clear from the board's findings, which are supported by the evidence, that claimant had the choice of exercising his seniority rights and continuing his employment or surrendering them and receiving a displacement allowance. In other words, claimant had the free and voluntary choice of continuing his employment. A witness for the employer testified: "Q. Was there any compulsion on this claimant to apply for a displacement wage? A. It is fully a voluntary action."

The board, in its decision, concluded that claimant by his own affirmative action relinquished his seniority rights; that the fact the employer intended to reduce the labor force did not make claimant's separation involuntary; and that the claimant had the option to remain employed. In effect, claimant retired solely by his own choosing; consequently, his voluntary act became the proximate cause of his unemployment. See *Campbell Unemployment Compensation Case,* 180 Pa. Superior Ct. 74, 77, 117 A. 2d 799.

Claimant relies largely upon *Jarrett Unemployment Compensation Case,* 182 Pa. Superior Ct. 491, 128 A. 2d 184. That case is not controlling. In the *Jarrett* case the factor in bringing about claimant's unemployment was not her act of marriage. As we pointed out, claimant's marriage did not have as its direct and immediate consequence her unemployment, but that it was an act clearly outside of claimant's control which resulted in her unemployment. In the present case claimant's unemployment was the result of his voluntary act.

It is essential in these cases to recognize that a labor-management contract in itself cannot determine, regardless of the facts and the law, whether the termination of employment is voluntary or involuntary; such agreement, as here, may provide conditions of employment which an employe may choose to accept or reject by some voluntary act on his part. See *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410.

Decision is affirmed.