**CENTRAL MISSOURI PAVING COMPANY, INC., a Missouri Corporation, Petitioner-Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, the Division of Employment Security of Missouri, and Richard M. Walker, Respondents-Respondents.**

**CENTRAL MISSOURI PAVING COMPANY, INC., a Missouri Corporation, Petitioner-Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, the Division of Employment Security of Missouri, and William E. Walker, Respondents-Respondents (two cases).**

**Nos. 29805, 29806 and 29975.**

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1978.

Channing D. Blaeuer, Cynthia A. Suter, Blaeuer & Suter, Moberly, for petitioner-appellant.

D. J. Chatfield, Jefferson City, for respondents-respondents.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Richard M. Walker, William E. Walker and Gerald Pottinger applied for unemployment benefits under the Missouri Employment Security Law, Chapter 288, RSMo 1969. The deputy found all three applicants to be eligible, but on appeal the referee sitting as an appeals tribunal reversed and found all three applicants disqualified. On appeal to the Labor and Industrial Relations Commission, the Commission found the applicants eligible. On appeal to circuit court the court which heard the appeals of Richard Walker and William Walker affirmed the finding of the Commission as did the court which heard the appeal of Pottinger.

On this appeal the determinative issue is whether or not the three applicants quit their work for good cause attributable to their work or to their employer. Reversed.

All three applicants had worked for Central Missouri Paving for over six years, with Pottinger having been employed for seven years and Richard Walker for seven and one-half years. Richard Walker and

William Walker were brothers. Richard was a foreman, Pottinger was a raker. or roller, and William worked in various capacities—running a roller, shoveling, raking and driving a water truck. All three left their work on August 27, 1976. The undisputed reason the three left was a disagreement over wages for the period from July 26 to August 27, 1976.

Central Missouri Paving performed work for both public bodies and private individuals or companies. For work performed for public bodies, in this instance principally the State Highway Commission, § 290.210 et seq., RSMo 1969 required that prevailing wages, as determined by the Department of Labor and Industrial Relations, be paid. For private work, no such requirement existed. The prevailing wages for public work were higher than Central Missouri Paving agreed to pay the three employees for private work.

In August, 1976, the three applicants decided they were entitled to receive the higher prevailing wage rate of pay for time spent working on State Highway projects for the necessary work of preparing machinery prior to the actual commencement of asphalt laying and also for clean-up after the asphalt had been laid. Central Missouri Paving had been estimating the arrival time of the first load of asphalt on the construction site and began the prevailing wage rate at that time. For any time spent prior to this all three employees were paid on the private wage scale. At the conclusion of the day, the time the last load of asphalt had been run through the machines was estimated and the prevailing wage rate was discontinued. For any time spent thereafter the employees were paid at the private scale.

There is no dispute between the parties as to the facts. Pottinger, who formerly had worked under another foreman, but in August, 1976, worked under Richard Walker, had previously complained that he did not think the prior foreman kept his time correctly and that he was not paid the prevailing rate for the time spent before and after the actual laying of asphalt. On August 27, 1976, he told Mr. Eads, the president of the paving company, that he would not work for his former foreman unless he could keep his own time. When informed that he could not keep track of his own hours, he quit.

On August 22, 1976, Richard Walker told Mr. Eads that if he and William were not paid the prevailing wage rate for time prior and subsequent to the actual laying of asphalt, both of them would quit. There is no evidence of any other efforts to resolve the disagreement as to whether the prevailing rate should have been paid for the disputed time. However, Pottinger did go to the State Highway Commission about this problem after he quit.

In all three cases the referee acting as an appeals tribunal found the employees did not act as reasonably prudent persons in resolving the wage dispute and should have gone to the proper State agency in an effort to resolve the issue before quitting their jobs. The referee found the three did not have good cause attributable to their work or to their employer and were therefore disqualified. The Commission found in all three cases essentially the same facts as the referee and stated, "it seems clear that the employer is violating the requirements of the prevailing wage law, § 290.210 et seq., RSMo 1969, and very possibly the federal wage and hour law. We feel that when an employer is not paying in accordance with the requirements of State law, the claimants had good cause to quit when their demands to be properly paid were not met."

This court finds error in the Commission's conclusion because the record does not demonstrate the applicants were correct in their assertion that the disputed time should have been paid at the prevailing wage rate rather than at the lower rate. Nor is an answer found to this question in § 290.210 et seq.; the sections do not spell out whether prevailing wages are to be paid for inci-

dental work such as preparation and clean-up. However, it is unnecessary to determine on this appeal whether the applicants were entitled to the higher rate for all of the time they claimed. Rather, the question to be determined is whether the applicants quit their jobs for good cause attributable to their work or their employer.

The burden of proof to establish good cause rests upon the applicants and " '[w]hether the favorable evidence establishes good cause is a question of law.' *Citizens Bank of Shelbyville v. Industrial Commission,* supra [Mo.App.], 428 S.W.2d [895] at 897[3]." *Belle State Bank v. Ind. Com'n Div. of Emp. Sec.,* 547 S.W.2d 841, 844[1], [2] (Mo.App.1977).

No case has been cited or located which involves the facts present here. However, this court finds the reasoning of the referee to be correct when he found the applicants should have made greater efforts to resolve the dispute before resorting to the drastic remedy of quitting their jobs. Pottinger did go to the State Highway Commission after he quit, but he and the other two could have gone to the State Highway Commission or the Department of Labor and Industrial Relations before quitting in an effort to determine the existence of rules or regulations which might resolve the dispute. The referee found that on the day Pottinger quit, he merely informed the president of the Paving Company that he was quitting and made no effort to resolve the dispute. In the case of the Walker brothers, just five days before quitting they gave what amounted to an ultimatum, stating that if their demands were not met they were quitting. Likewise, they could have made efforts to discuss the matter with the employer or to obtain advice from an appropriate State agency to assist in resolving the dispute before quitting.

An essential element of good cause to quit is good faith and the standard by which good cause is measured is one of reasonableness as applied to the average man or woman. *Belle State Bank, supra* at 846, 847[5]. This court concludes that all three applicants have failed to sustain their burden of showing the essential element of good faith which in turn would tend to show the existence of good cause to leave their employment. In the case of Pottinger, he quit primarily because the company would not agree that he could keep his own time when the well established policy required the foreman to do this. In addition, Pottinger had a complaint about the time at which the prevailing rate was to begin. Common to all three is the fact the company for a number of years had followed the same practice in determining when to begin and end the payment of the prevailing wage with no complaint until just a few days before all three quit. The evidence does not show any good faith effort on the part of the three to have a discussion concerning a change in the long-standing policy nor does it show any effort by any of the three to obtain any outside assistance or advice from any State agency which might be involved.

The record does show a sudden decision on the part of all three that unless their demands were met within a few days they would quit. On this record this court concludes the referee was correct in finding the three did not act as reasonable men under these circumstances. The Commission should have affirmed the referee.

Nothing in this opinion should be construed as passing on the question of whether Central Missouri Paving was in violation of the prevailing wage law. The holding in this case is confined to finding the three applicants did not exert good faith efforts to resolve the dispute as to the rate of pay for the preparatory and concluding time connected with the actual construction.

In each case the judgment of the circuit court is reversed and the cause is remanded with directions to remand each cause to the Labor and Industrial Relations Commission with directions to affirm the decision of the appeals referee.

All concur.