**DIVISION OF EMPLOYMENT SECURITY, Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, Priscilla McAdoo and Hussmann Refrigerator Company, Respondents.**

No. 43511.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 8, 1982.

Rick V. Morris, Larry R. Ruhmann, Jefferson City, for appellant.

Timothy P. Duggan, Jefferson City, for respondent Labor and Indus. Relations Com'n.

Burton Halpern, Bridgeton, for respondent Hussmann Refrigerator Co.

REINHARD, Presiding Judge.

The Division of Employment Security appeals from a decision of the circuit court affirming the determination of the Labor and Industrial Relations Commission. The Commission found Priscilla McAdoo, claimant, voluntarily left work with good cause attributable to her work or employer, and was not disqualified for employment benefits pursuant to § 288.050 RSMo.1978. We reverse.

Claimant was employed as an assembler by Hussmann Refrigerator Company for almost two years. Her job required her to work on a production line constructing rear shelves and placing gaskets on refrigerator cases. In the summer of 1979, employer experimented with increasing production levels. Production on the line to which claimant was assigned had been 23 refrigerator cases per eight hour day, but was increased to 28 per eight hour day. For the week of August 28 to September 3, 1979, production on claimant's line was 28 cases per day—during which time she had no assistance.

Production was increased for the first time to 35 cases for a ten hour day on September 5, 1979.[1] Claimant began work at 7:30 a.m., but left the gaskets off the refrigerator cases, a part of her assigned job. According to her testimony, about 10:00 the foreman came to her and asked her why she wasn't putting the gaskets on the cases. She answered, "I didn't have time and it was too much and I was behind." Thereupon, he asked her, "Why didn't you come in here and tell me?" She responded, "I didn't feel like I had to . . . . You know I didn't have any help." She then told him, "You can take the job."

Foreman's account of the conversation paralleled the claimant's. He testified he "asked Priscilla why wasn't the gasket on . . . ." She then stated that, "she needed help . . . . I explained to her the job doesn't warrant a helper . . . and she says, Why, I can't do it all, and I quit . . . ." He then said, "Priscilla, let's go talk about it," and she replied, "No, I don't want to talk about it. I quit."

---

1. This was the same rate as the previous week of 3.5 cases per hour, but for two additional hours each day.

Claimant testified that at the rate of 35 cases per ten hour day, she needed a helper and that one had been furnished to her in the past on occasion. She contended that others who asked for helpers when the rate was increased to 35 cases per day were given them. The foreman testified as to the policy of providing helpers and said their use was dependent on available workers because of vacations and absenteeism.

Claimant testified she knew the company grievance procedure and after she quit, attempted to see the plant ombudsman, but he was on vacation. Claimant stated she did not ask if someone was filling in for the ombudsman because she did not feel it would have done any good. Employer testified a substitute for the ombudsman was available. At the time of the hearing, production was 28 cases per eight hour day.

After claimant filed for unemployment compensation benefits, a deputy of the Division of Employment Security determined that claimant voluntarily quit without good cause and was disqualified for unemployment benefits. Upon the claimant's appeal to the Appeals Tribunal, the deputy's determination was affirmed. The appeals referee found that claimant left work because she was upset with the amount of work, however, she did not show good cause because "she made no complaint to any one in authority before leaving ... [and] ... no effort to protect her position."

The Labor and Industrial Relations Commission reversed the Appeals Tribunal. The Commission found that:

> [T]he claimant voluntarily left her work on September 5, 1979, because she was expected to complete a work assignment of 35 cases a day, whereas before, in the normal course of the employer's business, she had been given assistance if she were expected to do more than 28 cases a day. It is found that the employer was aware of the fact that the assignment to the claimant was unreasonable, the employer having made an adjustment in the assignment to that work station after the claimant left so that only 28 cases a day were expected to be completed by one person.

■ While we review the evidence in the light most favorable to the finding of the Commission, considering all reasonable inferences and decide whether the Commission could reasonably have made its findings upon consideration of the evidence before it, we are not bound by the decision of the Commission as to questions of law. *Cardinal Newman College v. Labor and Industrial Relations Commission*, 624 S.W.2d 532, 534 (Mo.App.1981).

■ Here, the claimant had the burden of proof to establish good cause, and whether the favorable evidence established good cause is a question of law. *Contractors Supply v. Labor and Industrial Relations Commission*, 614 S.W.2d 563, 564 (Mo.App. 1981).

There is little dispute as to the basic facts. The question with which we are confronted is not as the Commission perceived the issue, whether it was reasonable for the employer to expect claimant to produce 35 cases in a ten hour day, but rather whether the claimant's decision to quit the job was reasonable and made in good faith. *Central Missouri Paving Co., Inc. v. Labor and Industrial Relations Commission*, 575 S.W.2d 889, 892 (Mo.App.1978).

■ The voluntary termination of employment must be made in good faith and conform to the conduct of the average person who acts with reasonableness. *Contractors Supply v. Labor and Industrial Relations Commission*, 614 S.W.2d at 564. Good cause is a cause which reasonably would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. *Belle State Bank v. Industrial Commission Division of Employment Security*, 547 S.W.2d 841, 846 (Mo.App.1977).

In *Contractors Supply v. Labor and Industrial Relations Commission*, 614 S.W.2d 563 (Mo.App.1981); *Central Missouri Paving Co. v. Labor and Industrial Relations Commission*, 575 S.W.2d 889 (Mo.App.1978);

and *Belle State Bank v. Industrial Commission Division of Employment Security*, 547 S.W.2d 841 (Mo.App.1977), the courts of appeal in each instance reversed Commission findings that the claimants voluntarily quit with good cause. In *Contractors Supply*, the court held that claimant's action in failing to attempt to resolve a dispute concerning overtime with his employer before quitting did not constitute good faith, even though his claim may have had merit. Similarly, in *Central Missouri Paving*, the court held that the claimants' actions in failing to take their pay dispute with their employer to a state agency, prior to quitting, did not constitute good faith, even though their claim may have been justified. In *Belle State Bank*, the court held that claimant's quitting over proposed temporary changes in benefits and working conditions did not constitute good cause.

■ In light of these cases, we believe that the evidence presented does not establish good cause. Claimant should have made a greater effort to resolve her dispute with her employer before resorting to the drastic remedy of quitting. There was no evidence of any prior effort by the employer to harass this particular employee.

The employer had every right to attempt to reasonably increase its production levels. There was no evidence that the scheduled production level of 35 cases per ten hour day was a permanent arrangement and the employer had a right to determine whether its employees could maintain that pace. There was no evidence that claimant was in danger of being fired for failing to keep up with production that morning. Claimant attempted to see the plant ombudsman but only after she had quit her position.

Under the circumstances here, claimant's abrupt disseverance from her employment was unreasonable and not made in good faith. Therefore, her voluntary termination was without good cause attributable to the work or the employer and disqualified her from unemployment compensation benefits.

The judgment of the circuit court is reversed and the cause is remanded with directions to remand the cause to the Labor and Industrial Relations Commission with directions to deny the claim.

Judgment reversed.

SNYDER and CRIST, JJ., concur.