**ST. JOSEPH HEALTH CENTER, Appellant,**

v.

**MISSOURI LABOR AND INDUSTRIAL RELATIONS COMMISSION and Missouri Division of Employment Security, and Ramona E. Outersky, Respondents.**

No. WD 40282.

Missouri Court of Appeals, Western District.

Dec. 6, 1988.

James G. Baker & Georgann H. Eglinski, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

James B. Crenshaw, Jefferson City, for Labor and Indus. Relations Com'n.

Sandy Bowers, Chief Counsel, for Div. of Employment Sec.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Ramona Outersky filed a claim for unemployment compensation benefits after she resigned her employment with St. Joseph

Health Center. A deputy in the Division of Employment Security found that Outersky was disqualified because she left work voluntarily without good cause attributable to her work or her employer. Outersky appealed to an Appeals Tribunal which reversed the referee and found her eligible for benefits. On appeal, the Labor and Industrial Relations Commission affirmed the Appeals Tribunal with one member dissenting. On appeal to the circuit court the decision of the Commission was affirmed. St. Joseph appeals to this court and contends the Commission's action is not supported by competent and substantial evidence.[1] Reversed and remanded.

Outersky was employed as a certified surgical technologist in the operating room at St. Joseph for five and one-half years. In February of 1987 St. Joseph announced that as part of a downsizing effort all full-time employees would be given the opportunity to voluntarily resign and thereby receive a lump sum bonus of $1500. The announcement stated that the voluntary resignation program would be available from February 18, 1987 to March 4, 1987 with the resignation to be effective no later than March 31, 1987.

An explanation of the voluntary resignation program was attached to the announcement of the program. The explanation stated that "[E]mployees that choose to resign during the program will receive a lump sum, the amount based upon their scheduled hours." The sheet further explained that the program was being offered as a part of the hospital restructuring effort as "... an alternative for employees that are considering a change in their careers or life." The explanation further stated that to participate an employee was required to complete a voluntary resignation program form.

In addition, it was specified that resignations would be limited to the first 15% of full and part-time employees per cost center (department) to apply. Employees who applied after the 15% limit had been reached, could appeal to the personnel director to have their resignation accepted.

There was undisputed evidence that the hospital held information sessions for employees to explain the voluntary resignation program. During these sessions it was explained to the employees that as the program was voluntary, the decision of whether or not to participate was entirely theirs. Furthermore, the hospital stated that it was not trying to force anyone to quit and whatever decision an employee made was fine with the hospital. The hospital further informed employees that participants would not be eligible for unemployment benefits.[2]

Outersky signed the voluntary resignation program form which stated that she voluntarily resigned from her employment effective March 26, 1987. The form stated that she acknowledged that as a result of her resignation she was receiving a resignation bonus. The form further stated that she acknowledged that she had not been forced to resign nor had the hospital acted in any unlawful manner toward her.

Outersky testified that she submitted her resignation on the first day of the program because she was afraid that if she didn't voluntarily resign she would be in that "15% layoff." Outersky further testified that her job had not been eliminated but that there was a rumor that it would be and she "panicked." In addition, Outersky testified that she chose to resign, and apply the $1500 to the payment of her bills, so that she could pursue a career in Mary Kay Cosmetics, which required a full-time commitment.

At the time Outersky resigned, there was testimony from St. Joseph's that she was a satisfactory employee, and work was available for her in the operating room.

1. Outersky has made no appearance in this court.

2. The hospital does not contend that it can rely on the statement to employees that participants would not be eligible for unemployment benefits as a basis on which benefits can be denied. Indeed the hospital could not rely on an agreement by an employee to waive benefits because such an agreement is barred by § 288.280.1, RSMo 1986.

Previously, the hospital had made available a voluntary early retirement program as part of its effort to reduce the number of employees. However, there was no evidence that the hospital had laid off any employees, nor was there evidence that the hospital had a specific goal of eliminating any particular number of employees. The evidence indicated that one hundred employees took advantage of the voluntary resignation program but that the 15% quota was not exceeded in any cost center.

Section 288.020.1, RSMo 1986, declares that the public good and general welfare of the people of the State require a "... compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Section 288.050, RSMo 1986, provides for disqualification from unemployment benefits if an employee has "... left his work voluntarily without good cause attributable to his work or to his employer." The burden of proof is on Outersky to establish that she left her employment with good cause. *Division of Employment Sec. v. Labor and Indus. Relations Comm'n.*, 636 S.W.2d 361, 363[2] (Mo.App.1982). Whether or not the evidence viewed in the light most favorable to Outersky establishes good cause is a question of law and this court is not bound by the decision of the Commission on that question. *Id.* at 363.

The Appeals Tribunal found that Outersky would not have submitted her resignation if the bonus had not been offered and if there had been no threat of a layoff. The Commission adopted this finding. As noted above there was no evidence that St. Joseph had announced any layoff or threatened a layoff, nor had it announced that it was seeking to reduce its work force by any particular number. There was no evidence that any pressure was brought to bear on Outersky to resign. The evidence was that the voluntary resignation program with a bonus was made available to all employees and that pursuant to that program Outersky voluntarily submitted her resignation.

The Appeals Tribunal found that the ultimate decision of who would be allowed to participate in the voluntary resignation program was made by the employer and the employer could have rejected an employee's application to participate. The Tribunal found that the resignation form submitted was an application to participate and before the resignation became effective the employer was required to approve the application so that the employee could receive the bonus. The Tribunal considered that the employee participation in the program would not have unemployment as its direct and immediate result but that a future act was required—the employer approval of the application. The Tribunal said that in this manner the employer selected Outersky to be one of the employees to become unemployed. The Tribunal stated that Outersky's unemployment resulted from the employer reducing its work force in selecting Outersky to be one of the employees to be laid-off.

It is obvious that the Tribunal tailored its findings of fact to bring its result within the holding of *Missouri Div. of Employment Sec. v. Labor & Indus. Relations Comm'n. of Missouri*, 651 S.W.2d 145 (Mo. banc 1983), rather than on the facts presented to the Tribunal. There was no evidence that St. Joseph had to approve any resignation so long as the person resigning was within the first 15% of the employees in each department. The program stated that any employee who participated would receive the bonus and his employment would terminate. The only selection on the part of St. Joseph mentioned in the program involved a situation in which more than 15% of the employees in a department submitted resignations and in that event those who were above the first 15% to resign could request the personnel department to accept their resignation. That situation did not occur because 15% of the employees in Outersky's department did not participate in the program and thus there was no requirement that the hospital make a decision of whether or not to accept Outersky's resignation. The program announced made it clear that if she were within the first 15% to resign in her depart-

ment her resignation would terminate her employment and she would receive the bonus without any further action on the part of the hospital.

The findings of fact by the Appeals Tribunal are not supported by the evidence in the respect just discussed and also in finding that Outersky resigned because of a threat of layoff. There was no evidence that St. Joseph made a threat to lay off any employee, nor was there any evidence that any layoff occurred before, during, or after the existence of the voluntary resignation program.

The Tribunal did not make any finding concerning coercion but it is well to observe that there was no evidence of any coercion or pressure on Outersky to resign. The voluntary resignation form states that fact and there is no evidence to the contrary.

The Commission relies upon *Missouri Div. of Employment Sec. supra,* in which the Supreme Court held that employees who volunteered to be in a pool from which Uniroyal would select employees to be laid-off were entitled to unemployment compensation. As pointed out above, the facts in this case do not bring it within that holding. In that case, although the employees volunteered to be in a pool from which the layoffs were to be made, the unemployment of those laid-off was the result of Uniroyal's action in laying off those employees. The court adopted the Pennsylvania test that causation of unemployment as provided by law "... is that having as its direct and immediate consequence the claimant's unemployment." *Id.* at 150[1]. The direct and immediate cause of unemployment in that case was the action of the employer in laying off the employees. As noted, there was no action on the part of St. Joseph in laying off Outersky. Her unemployment resulted solely from her voluntary resignation.

Although there have been no Missouri cases involving the offer of a bonus to encourage employees to resign, there are similar cases from other states. In *Herbster v. Unemployment Compensation Bd. of Review,* 186 Pa.Super. 172, 142 A.2d 747

(1958), notice was posted that displacement wages would be paid to employees who desired to surrender their seniority rights and rights to recall. The claimant gave written notice of his election to accept the displacement wages and the employer paid him the amount due. The court held that the claimant had the choice of exercising his seniority rights and continuing in his employment or surrendering them and receiving a displacement allowance. There was evidence that there was no compulsion for the claimant to apply for the displacement wage. The court further pointed out the fact that the employer's intent to reduce the labor force did not make the claimant's separation involuntary; the claimant had the option to remain employed. The court concluded that the claimant retired by his own volition. Consequently, that voluntary act became the proximate cause of his unemployment.

In *York v. Review Bd. of Indiana Employment Sec. Div.,* 425 N.E.2d 707 (Ind. App.1981), two employees of Ford Motor Company were offered a special bonus to be paid from the time they retired until they reached age 65 if the employees would retire early. The employees accepted the offer and then filed for unemployment compensation. The court held that Ford had presented a retirement offer and the employees had accepted because of economic hardship in the automobile industry and their fears of the future with their employer. The court held that the employees were not terminated or forced to work under changed conditions. The court pointed out the purpose of the Employment Security Law was to provide benefits to those who were unemployed through no fault of their own and held that the employees voluntarily accepted retirement and were therefore not eligible for benefits. *Id.* at 711[6, 7].

Another similar case is *McGraw v. Director of Postal Data Center,* 319 So.2d 797 (La.App. 1st Cir.1975). There the employee retired early in order to take advantage of increased retirement benefits. The employee argued that the offer of early retirement coupled with his subjective in-

tent to reenter the labor market constituted good cause for leaving his employment. The court held that optional early retirement plans do not per se constitute an inducement to retire prior to mandatory retirement age, but rather, that such plans merely provide opportunity for early retirement to those who elect to take advantage of it for whatever reason. The court held that any election to take retirement with increased benefits did not constitute good cause for leaving employment.

█ The facts in this case bring it within the holdings of *Herbster, York,* and *McGraw.* Outersky had the choice of whether to remain employed or to accept the offer of St. Joseph to resign and receive a bonus. There was nothing in her resignation that was attributable to her work or her employer. There was no evidence that her resignation was anything but voluntary. The evidence is completely devoid of any good cause for Outersky leaving her employment except for her own desire to accept the offer of St. Joseph and voluntarily resign. The purpose of the employment security law is to benefit persons unemployed through no fault of their own. The purpose of the law is not served by paying unemployment benefits to persons who voluntarily resign without good cause attributable to their work or employers.

The evidence does not establish as a matter of law that Outersky had good cause to voluntarily leave her employment and become unemployed. For that reason she is not entitled to unemployment compensation. The judgment is reversed and this cause is remanded to the circuit court with directions to enter judgment reversing the decision of the Commission and with further directions to remand this cause to the Commission with directions to deny benefits to Outersky.

All concur.