TIN MAN ENTERPRISES,
INC., Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS
COMMISSION OF MISSOURI, et al.,
Respondent.

No. 64159.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 16, 1993.

Rehearing Denied Dec. 16, 1993.

Anderson, Gilbert & Garvin, Craig A. Sullivan, St. Louis, for appellant.

Alan J. Downs, Div. of Employment Sec., St. Louis, Victorine R. Mahon, Labor and Indus. Relations Com'n, Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Tin Man Enterprises, Inc., appeals from a Circuit Court judgment which affirmed the decision of the Missouri Labor and Industrial Relations Commission (Commission) that claimants, Stephanie Messmer, Nancy Prusinowski, and Ken Rapp, were entitled to unemployment compensation benefits. We affirm.

In an unemployment compensation case, the findings of the Commission as to the facts, if supported by competent and substantial evidence and in absence of fraud, are conclusive; judicial review then is confined to questions of law. § 288.210 RSMo 1986. Within that scope of judicial review, we consider the record in this case.

Stephanie Messmer, Nancy Prusinowski, and Ken Rapp voluntarily terminated their employment with defendant. Each one filed a claim for unemployment compensation benefits. Stephanie Messmer quit on March 4, 1991, after approximately four and a half years of employment with defendant. Mess-mer was an audio duplicator. Messmer testified that she resigned because of the crowded conditions at the plant; the employees were not trained properly; she had to work with dangerous chemicals with strong odors and the nearest exit to her work station was bolted shut. When she complained to the boss's son, John Bussen, about the chemical xylene he told her it wasn't harmful. The reason she did not complain to the Occupational Safety and Health Administration (OSHA) until after she quit was a fear of retaliation by defendant. When Messmer resigned she did not state her reason for quitting to the defendant.

Nancy Prusinowski resigned on March 3, 1991, after being employed by defendant for approximately eleven months. She was an assistant printer. Prusinowski testified that she resigned because of hazardous working conditions. She complained that the press she used was held together with pieces of tape and frequently broke and misfired. She complained to Mr. Bussen, her boss, who said he would have it fixed. Also, the chemicals she worked with, especially xylene, ate through her rubber gloves. She complained of the heavy fumes from the xylene to one of her bosses, Mrs. Bussen, who told her that she was tired of her "whining and crabbing." Mr. Bussen told her that the fumes were at her feet and therefore not where Prusinowski would be breathing them.

Prusinowski took the Friday before she quit off to go to the doctor. She was asked to work Sunday to make up the time she missed. She said that she could not work on Sunday due to a prior commitment. Mr. Bussen told her that he would get back to her but never did. Not sure if she was expected to work on Sunday, she called in on Sunday to say that she could not work. She called back a second time to quit because she believed that she would be fired anyway for not coming in on Sunday. After she quit, Prusinowski contacted OSHA about the working conditions at defendant's company. She stated that the reason she did not contact OSHA sooner was that she did not think it would do any good.

Ken Rapp resigned March 3, 1991. He had been a discontinuous employee of defen-

dant for approximately five years. He was employed as a printer. He testified that he quit because of unsafe working conditions. He complained of hazardous chemicals, being crowded in a small workplace, incorrect wiring and lack of ventilation. Rapp had complained to management at least four times concerning the lack of ventilation. Rapp had asked for the Friday before he quit off to register for school. He was told that he would have to work Sunday during the day to make up the lost time. He called in that Sunday and resigned.

Defendant first contends that the Commission erroneously applied a subjective standard of "good cause" in concluding that claimants were justified in terminating their employment.

The Commission determined that claimants quit their jobs for good cause attributable to the work or to the employer. Section 288.050.1(1) RSMo Cum.Supp.1992, requires the Division of Employment Security to deny unemployment benefits if a worker voluntarily quits his or her job absent good cause. But, there is no disqualification if there is found to be good cause attributable to the work or employer as in this case. A claimant has the burden of proving good cause. § 288.050.1(1); *Division of Employment Security v. Labor and Industrial Relations Commission*, 636 S.W.2d 361, 363 (Mo.App. 1982).

■■■ Good cause is a standard of reason applied to the average person, not to the supersensitive. *Rothschild v. L.I.R.C., Div. of Empl. Sec.,* 728 S.W.2d 720, 721 (Mo.App. 1987). The Commission applied the reasonable person or worker standard which requires that the claimants prove either that their concerns are real or that a reasonable worker would have such concerns. *Id.* Thus, the standard applied was not purely subjective but rather required a good faith belief based on reasonable consideration of real and substantial occurrences. *Id.* Defendant also contends that there was no substantial and competent evidence that the workplace conditions were actually hazardous. We disagree. The claimants testified to crowded conditions, blocked exits, malfunctioning machinery and hazardous chemi-

cals which made the workplace hazardous for the employees. Defendant's first point is denied.

■■■ Defendant next contends that the Commission erred in its decision because the claimants failed to establish that they acted in good faith in terminating their employment. Voluntary termination of employment must be in good faith. *Kirn v. Labor and Industrial Relations Commission,* 700 S.W.2d 523, 525 (Mo.App.1985). To establish good faith the employee must prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job. *Central Missouri Paving Company v. Labor and Industrial Relations Commission,* 575 S.W.2d 889, 892 (Mo.App. 1978). Defendant argues the claimants failed to act in good faith because their complaints to management were minimal, they did not complain to OSHA prior to quitting their employment and they did not give hazardous conditions as their reason for quitting at the time of their resignation.

The record reflects that the problems at the plant were of a continuous nature. Many of the hazards were open and obvious to defendant. Complaints to defendant were rejected, ignored or ridiculed. Claimants testified that the reason for terminating their employment was hazardous working conditions. There is no requirement that an employee must complain to OSHA before quitting employment. Defendant's argument is simply an evidentiary argument which might support a different conclusion. Clearly there was competent and substantial evidence to support a finding that claimants acted in good faith. Defendant's second point is denied.

■■■ Finally defendant contends that there was no causal relationship between Prusinowski and Rapp terminating their employment and the hazards of their workplace. There was evidence in the record both pro and con on the issue. The Commission was the factfinder. Where the trier of fact has reached one of two possible conclusions from the evidence, this Court will not reach a contrary conclusion even if such a conclusion might have reasonably been reached. *Un-*

*ion–May–Stern Co. v. Industrial Commission*, 273 S.W.2d 766, 768 (Mo.App.1954). The causal connection between the two claimants quitting and their reason for doing so is a finding of fact which will not be disturbed by this court when such a finding, as in this case, is supported by the record. Defendant's final point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.