Irene WINGO, Appellant,

v.

**PEDIATRIC AND ADOLESCENT MEDI-CAL CONSULTANTS, INC., and Division of Employment Security, Respondents.**

No. 70324.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 29, 1996.

Richard R. Kordenbrock, Myers & Kordenbrock, P.C., St. Louis, for appellant.

Alan J. Downs, Div. of Employment Security, St. Louis, for respondents.

GARY M. GAERTNER, Judge.

Appellant, Irene Wingo ("claimant"), appeals the Final Award of the Labor and Industrial Relations Commission ("Commission") denying her claim for unemployment benefits. We affirm.

Claimant was employed as a medical assistant by Pediatric and Adolescent Medical Consultants, Inc. ("employer"), for eight and one-half years. At the end of October 1995, a Red Cross Association employee with whom employer had business dealings told claimant that claimant's supervisor, Jane Hicks, intended to terminate claimant for falsifying information on documents sent to Red Cross. Claimant approached Ms. Hicks about what she had been told. Ms. Hicks told claimant she and another supervisor, Jody Gellman, were going to discuss the problem with claimant at a future date.

On November 2, without having further discussed the situation with her supervisors, claimant approached Dr. Elliott Gellman, one of two doctors practicing at the clinic. Claimant told him she was giving her two weeks notice and resigning from her position effective November 17, 1995. Claimant told him she was "being harassed about different things and ... was informed that [she] would be fired." [1] Dr. Gellman told her she did not have to remain two weeks and accepted her resignation that day.

Claimant filed her initial claim for unemployment benefits on November 6, 1995. On November 21, a deputy from the Missouri Division of Employment Security issued a determination that claimant was disqualified for benefits. Claimant appealed to the Appeals Tribunal. A hearing was held before an Appeals Referee. At the hearing, claimant admitted she could have continued to work at the clinic for an indefinite period of time when she resigned. The Appeals Referee concluded claimant voluntarily terminated her employment without good cause attributable to the employer and affirmed the deputy's decision. Claimant then appealed to the Commission, which affirmed and adopted the Appeals Referee's findings and conclusions. Claimant now appeals to this court.

■ When reviewing the decision of the Commission, we take all evidence in the light most favorable to its determination and decide whether the Commission could have reasonably made its findings based on the evidence before it. *Division of Employment Sec. v. Labor, Etc.*, 636 S.W.2d 361, 363 (Mo. App. E.D.1982). We are not bound, however, by the Commission's findings regarding issues of law. *Id.*

■ A claimant is not entitled to unemployment benefits if he or she voluntarily quits his or her job absent good cause attributable to the work or the employer. RSMo § 288.050.1(1) (1994); *Tin Man v. Labor and Indus. Rel. Com'n*, 866 S.W.2d 147, 149 (Mo. App. E.D.1993). Good cause is determined by an average reasonable person standard, not by the supersensitive. *Tin Man*, 866 S.W.2d at 149. In other words, a worker has good cause to voluntarily terminate his employment "when that conduct conforms to what an average person, who acts with reasonableness and in good faith, would do." *Heavy Duty Trux v. Labor & Indus. Com'n*, 880 S.W.2d 637, 641 (Mo.App. W.D.1994). "The burden to prove good cause rests on the claimant, and whether the evidence meets the burden poses a question of law." *Contractors Supply v. Labor and Indus., Etc.*, 614 S.W.2d 563, 564 (Mo.App. W.D. 1981).

■ On appeal, claimant contends the Commission's award was erroneous as it was not supported by substantial and competent evidence. Claimant argues the evidence proved she was soon to be terminated and

---

**1.** Claimant's "harassment" complaint refers to a dress code violation for which she was cited on October 21, 1995. Office policy required medical assistants who interacted with patients to wear "scrubs." Claimant was written up for wearing regular white pants instead of her colored scrub pants.

she made a good faith effort to resolve the dispute before she resigned. We disagree.

With respect to claimant's first contention, the only evidence claimant was "about to be terminated" was a statement made by a third party not even employed at the clinic. Furthermore, at the hearing, claimant admitted she could have continued working at the clinic indefinitely, yet she chose to resign.[2] We do not believe claimant's reliance on this third party's uncorroborated statement to be reasonable. This conclusion leads us to claimant's second argument, that she made a good faith effort to resolve the dispute before resigning.

 Good faith is an essential element of good cause. *Tin Man*, 866 S.W.2d at 149. Good faith can be established by evidence employee attempted to resolve the dispute before resorting to the extreme remedy of terminating his or her employment. *Id., Heavy Duty Trux*, 880 S.W.2d at 644. Claimant contends her conversation with Ms. Hicks after learning of the Red Cross paperwork problem suffices to show she made a good faith attempt to resolve the dispute between herself and employer. We might agree with claimant if the evidence ended there. However, it does not.

The evidence not only reveals claimant initially raised the issue with her supervisor, but also reveals Ms. Hicks informed claimant that a discussion involving herself, claimant, and Ms. Gellman was forthcoming. Employer did not ignore claimant's concern, *but see Tin Man*, 866 S.W.2d at 148–49 (finding employees terminated employment with good cause where they repeatedly informed employer of concerns but to no avail), nor does claimant assert Ms. Hicks' statement was merely a delay tactic.

Rather than take advantage of that opportunity to work through the problem, claimant bypassed her supervisors and told a doctor, who played no role in either of claimant's reasons for leaving, that she was resigning, relying on the as yet *unconfirmed* information from the Red Cross employee regarding

her future termination. We find, based on the facts before us, claimant did not put forth a good faith effort to resolve the dispute before deciding to take the more drastic measure of terminating her employment. *See Kirn v. Labor & Indus. Relations Com'n*, 700 S.W.2d 523, 525 (Mo.App.E.D. 1985) (claimant's failure to remain through probationary period imposed by former denigrating supervisor evidenced lack of good faith effort); *Division of Employment Sec.*, 636 S.W.2d at 362–63 (claimant's refusal to talk about problem with supervisor at supervisor's invitation and further failure to follow grievance procedure evidenced lack of good faith effort); *Central, Etc. v. Labor & Ind. Rel. Com'n*, 575 S.W.2d 889, 892 (Mo.App. K.C.Dist.1978) (claimants' merely making demand with no attempt to discuss request evidenced lack of good faith effort); *but see Heavy Duty Trux*, 880 S.W.2d at 644 (claimant's thirty minute conversation with employer found to be good faith effort).

Based on the foregoing, the Commission's Final Award is affirmed.

DOWD, P.J., and REINHARD, J., concur.

---

**2.** In *Div. of Emp. Sec. v. Labor & Ind. Rel. C.*, 739 S.W.2d 747, 750 (Mo.App.W.D.1987), a claimant was found to have voluntarily terminated his employment at a factory where, although he knew the plant was going to close in the near future (effectively terminating him), he had not been given an exact date on which the factory would do so.