**AMERICAN FAMILY INSURANCE COMPANY, Appellant,**

v.

**Brenda HILDEN and Division of Employment Security, Respondents.**

No. WD 52677.

Missouri Court of Appeals, Western District.

Dec. 17, 1996.

Charles Ray Brown, Kansas City, for Appellant.

Brenda Hilden, Independence, party acting pro se.

Ronnae L. Coleman, Kansas City, for Respondent Division of Employment Security.

Before LOWENSTEIN, P.J., and BERREY and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from a decision of the Labor and Industrial Relations Commission (Commission) awarding unemployment compensation benefits to Brenda Hilden (respondent), who voluntarily terminated her employment with American Family Mutual Insurance Company (appellant). On appeal, appellant claims that the Commission erred in finding respondent was eligible for unemployment compensation benefits because she voluntarily terminated her employment without "good cause" in that: 1) she did not show that she acted "reasonably" when she quit after a dispute with her supervisor; and 2) she did not show that she acted in "good faith", since she terminated employment before giving appellant notice of her complaint and affording appellant an opportunity to take remedial action.

We reverse.

## FACTS

On April 23, 1990, Brenda Hilden (respondent) began working as a title clerk for American Family Insurance Company (appellant). Her immediate supervisor, the branch financial manager, was Michael Leslie (Leslie). In April, 1994, respondent filed her first complaint against Leslie. She and a co-worker spoke with the company human resources manager, Ken Licht (Licht), about what they perceived to be Leslie's policy of favoritism toward another co-worker with whom Leslie was personally involved. Licht testified that he notified neither Leslie nor the company of respondent's complaint, as

respondent had requested he keep the matter confidential.

On review, the Commission found that in May, 1995, respondent mentioned to Leslie that she was having difficulties securing child support payments from her former husband. Leslie told respondent that he could contact his brother, who was an attorney. In exchange for the assistance in collecting the back child support, respondent agreed to pay Leslie half of the money recovered. Leslie then contacted his brother and advised respondent of her options. With Leslie's help, respondent filled out the appropriate paperwork and began receiving payments in June or July of 1995.

When approached by Leslie, respondent admitted that she had started receiving child support payments, but told him that she did not intend to share the money with him as originally agreed. The Commission determined that Leslie began harassing the respondent and told her from that point on, he would no longer offer to help her and their relationship would be "strictly business". The respondent did not discuss this matter with Licht, Leslie, or any other person in authority before quitting because she felt it would not be beneficial. Following this conversation, respondent was absent from work on sick leave. While at home, respondent determined that because of her dissatisfaction with Leslie as her supervisor, she would voluntarily terminate her employment. She communicated her complaint and notification of termination to Licht on September 1, 1995, and filed for unemployment benefits on October 1, 1995.

On October 23, 1995, a Missouri Division of Employment Security deputy denied benefits on the grounds that respondent did not have "good cause" to voluntarily terminate employment. An Employment Security Appeals Tribunal affirmed. Upon review, the Labor and Industrial Relations Commission reversed and found that respondent did have good cause to terminate her employment, as Leslie illegally practiced law and harassed respondent for refusing to pay for his "services". Appellant now appeals this decision.

1. All statutory references are to RSMo 1994,

## STANDARD OF REVIEW

■ Appellate review of Labor and Industrial Relations Commission decisions of unemployment compensation benefits is governed by § 288.210,[1] which provides in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Further, this court has determined that the standard of review announced in *Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo.App.1995), is applicable to employment security decisions:

Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Merick Trucking, Inc. v. Missouri Department of Labor and Industrial Relations, Division of Employment Security,* 933 S.W.2d 938 (Mo.App.1996), citing *Davis,* 903 S.W.2d at 571. The finding of "good cause" for termination of employment is one of law rather than fact. *Heavy Duty Trux v. Labor*

unless otherwise noted.

*and Industrial Relations Comm'n,* 880 S.W.2d 637, 641 (Mo.App.1994).

## I.

On appeal, appellant contends that the respondent did not have "good cause" for voluntarily terminating employment, as found by the Commission, and is therefore ineligible for unemployment compensation benefits. Specifically, appellant alleges that respondent's voluntary termination of her employment was neither "reasonable" nor in "good faith".

■■■ Section 288.050 governs the unavailability of unemployment benefits.[2] It provides, in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages for work insured under the unemployment compensation laws of any state equal to ten times his weekly benefit amount if the deputy finds:

(1) That he has left his work voluntarily without **good cause** attributable to his work or to his employer ... (emphasis added).

"Good cause" is an objective standard of reasonability. *Tin Man Enterprises, Inc. v. Labor and Indus. Relations Comm'n,* 866 S.W.2d 147, 149 (Mo.App.1993). Unemployment compensation benefit claimants have the burden of proving good cause for their voluntary termination of employment. *Heavy Duty Trux,* 880 S.W.2d at 641; *Clark v. Labor and Indus. Relations Comm'n,* 875 S.W.2d 624, 627 (Mo.App.1994). Our appellate courts identified two elements which are necessary to establish good cause: 1) reasonableness and 2) good faith. The question then for us to decide is whether respondent, in voluntarily terminating her employment, acted reasonably and in good faith.

■■■ In order to receive unemployment compensation benefits after voluntary termination, a claimant must show that his or her termination was reasonable. *Heavy Duty Trux,* 880 S.W.2d at 641. "Good cause is a

cause which reasonably would motivate the average ablebodied and qualified worker in a similar situation to terminate his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." *Division of Employment Sec. v. Labor and Indus. Relations Comm'n,* 636 S.W.2d 361, 363 (Mo.App.1982). A showing of reasonability requires claimants to prove that either their concerns were real, or that a reasonable worker would share similar concerns. *Heavy Duty Trux,* 880 S.W.2d at 641.

Missouri courts have considered the issue of whether supervisor harassment will stand as a reasonable basis for voluntary termination of employment. *See, e.g., Backer's Potato Chip Co. v. Labor and Indus. Relations Comm'n,* 679 S.W.2d 909, 911–13 (Mo. App. 1984) (stating that a supervisor's abusive, profane language directed at an employee was insufficient to show good cause); *Reed v. Labor and Indus. Relations Comm'n,* 664 S.W.2d 650, 652 (Mo.App.1984) (stating that for claimant to prove her injuries of depression and anxiety resulted from supervisor harassment, medical evidence was needed).

The record here indicates that two separate complaints were made by respondent. Her original complaint was that Leslie favored one office employee to the exclusion of herself and others. However, when it awarded benefits, the Commission apparently was relying on a subsequent complaint of harassment as to Leslie concerning respondent's agreement to share her back child support proceeds if he helped her secure them. We need not decide whether either of the complaints, taken alone or in combination with each other, would motivate a reasonable person to terminate employment. The more determinative issue in this case is whether respondent's voluntary termination was in "good faith", the second element necessary to show good cause. *Heavy Duty Trux,* 880 S.W.2d at 641.

■■■ To demonstrate good faith, a claimant must show that before taking the "drastic" measure of termination of employment, he or

---

**2.** "Benefits" are defined in § 288.030 RSMo Supp.1996 as "... the money payments payable

to an insured worker, as provided in this chapter, with respect to his unemployment...."

she attempted to remedy the situation or dispute. *Id.; Backer's Potato Chip,* 679 S.W.2d at 913. In *Thurman v. Labor and Indus. Relations Comm'n,* 706 S.W.2d 601, 603 (Mo.App.1986), the claimant abruptly resigned after incidents of harassment by a co-worker. Without reaching the issue of the reasonability of the worker's claim, the court determined that she was not eligible for benefits. *Id.* Because the claimant left without giving notice and the opportunity to prevent future harassment, the court found that she did not act in good faith. *Id.*

Here, the respondent pointed to two instances where she informed appellant that she was dissatisfied with Leslie as a supervisor. Respondent complained of favoritism by Leslie to Licht, the human resources manager, in April, 1994, almost sixteen months before her more recent complaint. From the record it is impossible to discern whether she made her charge simply to inform the human resources department of the problem, or to file a formal complaint against Leslie with the expectation of remedial action being taken by the appellant. The Commission made no specific finding on this issue. Licht testified that respondent told him to keep the complaint in confidence, and the respondent admitted that she did not know whether Leslie had been informed of her complaint or not. In addition, although respondent testified that there was no improvement in the office conditions after her complaint of favoritism, she did not terminate her employment until after more than a year had passed, and then only after her complaint of harassment had been made.

Based upon the record, it is apparent that respondent's primary purpose for terminating her position was motivated by her dispute with Leslie concerning the child support money she recovered and agreed to share, followed by his harassment when she refused to honor their agreement. When questioned by the Appeals Referee at her hearing, respondent testified that her preexisting complaint factored into the decision, but pointed specifically to her second complaint as determinative:

Q: I can't base my decision on that (sic) only with (sic) what brought about your decision. Was there something that occurred then around the 1st of September that caused you to make the decision to go ahead and leave at that point?

A: Whenever I called in sick right after—after he told me he—he wasn't going to do another f_____ thing for me then he told me and I called in sick the next day and he told me that if this was the way I wanted to play the game that he'll play the game but he'll come out on top.

Tr. 8.

█ Respondent took three days of sick leave immediately following this argument with Leslie. The next working day, September 1, 1995, respondent left a message for Licht informing him that she was terminating her employment. Licht returned her phone call and again discussed respondent's complaints with her. Under these circumstances, whether her complaint of harassment was the sole reason for her termination is of no consequence. One thing is undeniably certain; it directly contributed to and was ultimately determinative of her termination of employment, and that without the harassment, she would not have terminated. Thus, before she resorted to the drastic measure of voluntarily terminating her employment, respondent was obligated to discuss her complaint of harassment with appellant and afford it the opportunity to take remedial action. She did not. Appellant had no opportunity to remedy the respondent's complaint of harassment, as it was accompanied by her immediate termination. We find that because respondent's notice was simultaneous with her voluntary termination, she did not act in good faith and her termination was not motivated by good cause. Therefore, contrary to *the decision of the Commission,* we find that the respondent is ineligible for unemployment compensation benefits under § 288.050.

**CONCLUSION**

The decision of the Commission granting respondent unemployment compensation benefits is reversed.

All concur.