**Roosevelt FAIR–KINCAID, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, and The Circuit Court Of Jackson County, Respondents.**

**No. WD 54220.**

Missouri Court of Appeals,
Western District.

March 10, 1998.

Samuel McHenry, Legal Aid of Missouri, for Appellant.

Jane E. Rosenthal, Kansas City, for Respondent Jackson County Circuit Court.

Sharon Willis, Dist. Counsel, Mo. Div. of Labor & Indus. Relations, Kansas City, for Respondent Div. of Employment Security.

PAUL M. SPINDEN, Presiding Judge.

Roosevelt Fair–Kincaid appeals the Labor and Industrial Relations Commission's decision to deny his request for unemployment compensation benefits. The commission concluded that Fair–Kincaid voluntarily left his job at Jackson County circuit court without good cause attributable to his work or to his employer. We affirm.

Fair–Kincaid worked as a youth worker for the circuit court's family court division for approximately nine years. On May 23, 1996, the circuit court suspended Fair–Kincaid without pay pending investigation of charges that he had not reported a co-worker's sexual abuse. On May 28, 1996, Michael Barnett, assistant director of operations, and David Wm. Kierst, Jr., director of Family Court Services, notified Fair–Kincaid by letter that the division was terminating his employment.

Pursuant to the circuit court's internal appeal process, Fair–Kincaid requested a pre-termination hearing to challenge the discharge. At the same time, he filed a worker's compensation claim in which he alleged that he suffered job stress because of "administrative injustice and false accusations." A letter from Fair–Kincaid's psychologist accompanied his worker's compensation claim.[1] The letter said that the psychologist was treating Fair–Kincaid for stress, and it said, "I have placed Mr. Fair–Kincaid on medical leave." At that time, Fair–Kincaid had not requested medical leave from his employer.

---

1. The worker's compensation claim was denied on July 1, 1996, on the ground that Fair–Kincaid did not establish that his injury arose out of, and in the course of, his job.

On June 14, 1996, the circuit court held a pre-termination hearing. Kierst ordered Fair–Kincaid's reinstatement to his job. Fair–Kincaid did not mention his worker's compensation claim or medical leave at the hearing.

On June 20, 1996, during a telephone conversation with Gary Charles his supervisor, Fair–Kincaid said for the first time that he had filed a worker's compensation claim and was on medical leave. The circuit court's medical leave policy required Fair–Kincaid to report the leave to his supervisor, to submit a request for leave, and to provide a physician's certification within 15 calendar days of requesting the leave.[2] Fair–Kincaid did not follow these procedures. Fair–Kincaid told Charles that he was ready to return to work as soon as his psychologist released him.

Fair–Kincaid did not return to work and did not telephone Charles or any other supervisor. Charles attempted to telephone Fair–Kincaid on June 25 and 26, 1996, and left messages with Fair–Kincaid's daughter. Fair–Kincaid did not respond to Charles' calls.

On July 2, 1996, Charles sent Fair–Kincaid a letter asking him to contact the court. On July 15, 1996, Fair–Kincaid sent a memo to Charles stating that he had not received official notice of his reinstatement, but he acknowledged knowing that he had been reinstated.

On July 23, 1996, Barnett sent Fair–Kincaid a letter requesting additional information regarding his failure to return telephone calls and to provide other information regarding his status. Barnett asked for a statement signed by Fair–Kincaid's physician giving the diagnosis, the date the problem began, the probable duration of the condition, the treatment prescribed, and the date when Fair–Kincaid would be able to return to work. Barnett noted in his letter that if Fair–Kincaid did not respond to the letter the court would deem him to have abandoned his job.

On July 30, 1996, Fair–Kincaid's psychologist sent Barnett a letter saying that he was treating Fair–Kincaid for anxiety, depression, and post-traumatic stress disorder associated with being unjustly terminated. The psychologist said that the problems began on June 10, 1996, and that he recommended weekly therapy sessions and medication for an indefinite time. He did not indicate a date of return.

On August 7, 1996, Kierst notified Fair–Kincaid that his failure to report to work on June 21, 22, or 23, 1996, or to contact his superiors constituted job abandonment and that Fair–Kincaid was regarded as having resigned his position. Fair–Kincaid filed an internal appeal with the presiding judge of the circuit court contesting the job abandonment. The appeal was untimely, but the presiding judge granted Fair–Kincaid a hearing. On October 31, 1996, an internal hearing was held before a three-judge review committee. The committee found that Fair–Kincaid had abandoned his job.

Fair–Kincaid applied for unemployment benefits. A deputy with the Division of Employment Security determined that Fair–Kincaid was disqualified from receiving unemployment benefits because he voluntarily left his employment without good cause attributable to his work or employer. Fair–Kincaid appealed the deputy's decision to the division's appeals tribunal which affirmed the deputy's decision. Fair–Kincaid appealed that decision to the Labor and Industrial

2. The circuit court's medical leave policy provided: " In order to request Family or Medical Leave an employee must notify his or her immediate supervisor *in writing* by submitting a LEAVE REQUEST FORM not less than thirty (30) calendar days prior to the date leave is to be effective. In the event thirty (30) calendar days notice is not possible, the employee shall complete the form as soon as practicable. The failure of an employee to provide timely notice (either written or oral) may result in the leave being considered "unauthorized leave" and may subject the employee to discipline up to and including termination[.] ... When leave is requested for the employee's serious health condition ..., the employee must provide his or her supervisor with a completed CERTIFICATION OF PHYSICIAN OR PRACTITIONER form within fifteen (15) calendar days of requesting leave.... If an employee fails to provide timely certification within fifteen (15) calendar days of being asked to do so, or as otherwise agreed, and the need for leave was foreseeable, *the Appointing Authority may deny the leave until the required certification is provided.*"

Relations Commission which adopted the appeals tribunal's decision.

When an employee voluntarily leaves his or her job, § 288.050.1(1), RSMo Supp. 1996, makes good cause a condition precedent to receiving immediate unemployment compensation benefits. The statute says:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for ... benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]

"A worker has good cause to terminate employment voluntarily when that conduct conforms to what an average person, who acts with reasonableness and in good faith, would do." *Contractors Supply Company v. Labor and Industrial Relations Commission,* 614 S.W.2d 563, 564 (Mo.App.1981). *See also American Family Insurance Company v. Hilden,* 936 S.W.2d 207, 210–211 (Mo.App. 1996). "To demonstrate good faith, a claimant must show that before taking the 'drastic' measure of termination of employment, he or she attempted to remedy the situation or dispute." *Id.*

Fair–Kincaid contends that the evidence established that his "psychologically debilitating condition" was caused or worsened by his employment and prevented him from returning to work. Even if that were true, he did not act in good faith. Whether or not the job caused or aggravated his mental condition, Fair–Kincaid did not act in good faith to retain his employment. He did not contact his employer within a reasonable time about his condition after he was advised of his reinstatement. In effect, he put himself on medical leave without following his employer's procedures.

Fair–Kincaid's telling his supervisor on June 20 that he had filed a worker's compensation claim and considered himself on medical leave did not put him on medical leave. Fair–Kincaid, to act in good faith, had to report the leave to his supervisor and to submit the proper paperwork. Fair–Kincaid ignored these procedures. His absence without approval and his lack of good faith in dealing with his employer established that he did not have good cause attributable to his work or his employer for not showing up for work. *See Clark v. Labor and Industrial Relations Commission,* 875 S.W.2d 624, 629 (Mo.App.1994), and *Turner v. Labor and Industrial Relations Commission,* 793 S.W.2d 191, 195 (Mo.App.1990).

Fair–Kincaid argues that when his employer "finally provided [him] with a statement of what they claimed they needed to finally approve his June 10, 1996 request for medical leave he had his doctor provide a specific and detailed response to the employer's request." His argument misses the point. He did not submit the information from his psychologist until after he had failed to follow the procedures to put himself on medical leave in the first instance. He did not act in good faith by taking medical leave without informing his employer and receiving approval.

We affirm the commission's decision that Fair–Kincaid voluntarily left his job without good cause attributable to his work or to his employer.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.