SIMPSON SHEET METAL, INC.,
Plaintiff–Appellant,

v.

The LABOR & INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, The Division of Employment Security, State of Missouri, Michael R. Curtis, and Joseph R. Babcock, Defendants–Respondents.

Nos. 19780, 19781.

Missouri Court of Appeals,
Southern District.

June 22, 1995.

Rick E. Temple, King & Temple, Springfield, for appellant.

Sharon A. Willis, Kansas City, Sandy Bowers, Jefferson City, for respondent, Div. of Employment Sec.

John B. Keller, II, Jefferson City, for respondent, Labor & Indust. Relations Com'n.

PREWITT, Judge.

Michael R. Curtis and Joseph R. Babcock each sought and were granted unemployment compensation benefits following termination of their employment with Appellant. The Labor and Industrial Relations Commission's determination was contrary to that claimed by Appellant. The Commission found that the employees were not terminated due to "misconduct", which might disqualify them "for waiting week credit or benefits for not less than four nor more than sixteen weeks." Section 288.050.2 RSMo 1994. The Circuit Court of Jasper County affirmed the Commission as to each employee.

Appellant appealed each matter and the appeals were consolidated here. Appellant contends that as a matter of law the employees were discharged for "misconduct connected with work". It requests this Court to reverse the Commission's decision and remand to it to have the employees disqualified "from receiving Unemployment Compensation benefits for a period of weeks to be decided by the Commission."

■ This Court reviews the decision of the Commission and not that of the circuit court. *Burns v. Labor & Indus. Relations Comm'n.,* 845 S.W.2d 553, 554 (Mo. banc 1993). The Commission's finding as to facts, if supported by competent and substantial evidence, in the absence of fraud, are conclusive. *Id.* at 554–555. In reviewing the decision, it is done in the light most favorable to the Commission's findings and decisions. *Id.* at 555.

■ This Court is not bound by the Commission's findings on questions of law. *Kansas City Club v. Labor & Indus. Relations Comm'n.,* 840 S.W.2d 273, 275 (Mo.App. 1992); *St. John's Regional Medical Ctr. v. Labor & Indus. Relations Comm'n.,* 814 S.W.2d 698, 699 (Mo.App.1991). Appellant contends that there is little, if any, dispute in the facts and that the question here is a question of law which was erroneously determined by the Commission.

Section 288.050 RSMo.Supp.1994 deals with disqualification of unemployment compensation benefits for misconduct connected with work which results in discharge. The pertinent part of that statute reads:

2. Notwithstanding the other provisions of this law, if a deputy finds that a claimant has been discharged for misconduct connected with his work, such claimant, depending upon the seriousness of the misconduct as determined by the deputy according to the circumstances in each case, shall be disqualified for waiting week credit or benefits for not less than four nor more than sixteen weeks for which he claims benefits and is otherwise eligible. In addition to the disqualification for benefits under this provision the division may in the more aggravated cases of misconduct cancel all or any part of the individual's wage credits, which were established through his employment by the employer who discharged him, according to the seriousness of the misconduct. A disqualifica-

tion provided for under this subsection shall not apply to any week which occurs after the claimant has earned wages for work insured under the unemployment compensation laws of any state in an amount equal to eight times his weekly benefit amount.

Neither § 288.050 nor Chapter 288 define "misconduct connected with his work". Judicially, "misconduct" has been defined in such cases as *Garden View Care Center, Inc. v. Labor and Indus. Relations Comm'n.*, 848 S.W.2d 603, 605–606 (Mo.App.1993) as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of his (or her) employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's obligations to the employer.

The purpose of unemployment compensation laws is to "benefit ... persons unemployed through no fault of their own." Section 288.020 RSMo.1994. *See Stanton v. Missouri Div. of Employment Sec.*, 799 S.W.2d 202, 203 (Mo.App.1990). Disqualifying provisions of the unemployment compensation law are to be construed against the disallowance of benefits to unemployed but available workers. *Missouri Div. of Employment Sec. v. Labor & Indus. Relations Comm'n.*, 651 S.W.2d 145, 148 (Mo. banc 1983). The employer has the burden of showing that an employee was discharged for misconduct connected with work. *Garden View*, 848 S.W.2d at 606.

The Commission affirmed but did not adopt the decision of the appeals tribunal of the Division of Employment Security. The Commission did not determine if the employees engaged in misconduct, but determined that each claimant:

> [W]as laid off due to a lack of work and for no other reason. The fact that a conversation ensued thereafter which was unfortunate for all parties concerned does not change the fact that the claimant was laid

off prior to the conversation and it had nothing to do with his being laid off for lack of work. A layoff for lack of work is not misconduct in connection with work. The ensuing dispute between the company president and the claimant is not relevant to determining the reasons for the claimant's separation from work.

Respondents contend that "the record shows that the workers had been laid off and the misconduct therefore did not occur on the job." However, it is not necessary that misconduct occur on the job but the statute says that it is to be "connected with his work." Section 288.050.2. There is little if any doubt here that the alleged misconduct, if it be such, was connected with the employees' work. The employees were notified that they were going to be temporarily laid off. The employees then demanded that they receive their payroll checks immediately and that Appellant's president return to Appellant's shop to discuss the matter and issue the checks.

When the president arrived a discussion ensued and both employees testified that they referred to the president as "a red headed cock sucker". Other derogatory references were made, but the parties do not seem to agree on the exact language used. There were also threats of destruction and violence which were at least partially admitted. This conduct was a disregard of the standard of behavior that an employer has a right to expect, and was thus misconduct. *Compare Acord v. Labor and Indus. Relations Comm'n.*, 607 S.W.2d 174 (Mo.App. 1980) (calling supervisor a "motherfucker"). *See also Fruehauf Div., Fruehauf Corp. v. Armstrong*, 620 S.W.2d 67, 69 (Mo.App.1981); Annotation, "USE OF VULGAR OR PROFANE LANGUAGE AS BAR TO CLAIM FOR UNEMPLOYMENT COMPENSATION", 92 A.L.R.3d 106; Annotation, "EMPLOYEE'S INSUBORDINATION AS BARRING UNEMPLOYMENT COMPENSATION", 26 A.L.R.3d 1333, 1338–1341; 76 AmJur.2d Unemployment Compensation, § 55, p. 951; 81 C.J.S. Social Security § 222.b, p. 435.

Babcock initially called Appellant's president a "red headed cock sucker", and the

president then said that Babcock was "fired". Curtis testified when that occurred he said, "yeah you're right Joe, he is a red headed cock sucker and that's when he said you're fired too and we walked to the truck and we left."

The next question is whether, as the Commission found, employment had been terminated before the conduct occurred and the Appellant's president said they were fired. In a claim for benefits under Chapter 288, our supreme court stated in *ACF Indus., Inc. v. Indus. Comm'n. of Missouri*, 320 S.W.2d 484, 491 (Mo. banc 1959):

> The term "layoff", in the field of employment, has a well-defined meaning. See Webster's New International Dictionary, 2nd Ed. It does not mean termination of employment, but rather does it mean: "The act of laying off, esp. work or workmen; a period of being off or laid off work; a shutdown; a respite."

Following *ACF Indus.*, the court stated in *Irwin v. Globe–Democrat Publishing Co.*, 368 S.W.2d 452, 455 (Mo.1963):

> A "layoff", as distinguished from a discharge, contemplates a period during which a working man is temporarily dismissed ... An employee "laid off" does not have his employment status completely and finally terminated. He ordinarily is entitled to re-employment when the temporary situation calling for the layoff has been corrected or eliminated.

It is not disputed here but that the employees were being temporarily laid off when the misconduct occurred on the employer's premises. There was evidence the layoff might have only lasted a week. The employees engaged in misconduct connected with their work before their employment was terminated.

The judgment of the circuit court is reversed and the cause remanded to it to enter judgment reversing the decision of the Labor and Industrial Relations Commission, and remanding the cause to the Commission for the Commission to determine the period of weeks for which the employees should be disqualified from receiving benefits.

CROW and PARRISH, JJ., concur.