**Melissa McCLELLAN, Appellant,**

**v.**

**BROWN TRANSFER AND STORAGE COMPANY, and Division of Employment Security, Respondents.**

**No. WD 53200.**

Missouri Court of Appeals,
Western District.

Sept. 9, 1997.

Kimberly Loving, St. Joseph, for Appellant.

Creath Thorne, St. Joseph, Sharon Willis, Kansas City, for Respondents.

---

SPINDEN, Judge.

Melissa McClellan appeals the Labor and Industrial Relations Commission's denial of her request for unemployment compensation benefits. The commission concluded that McClellan voluntarily left her employment with Brown Transfer and Storage Company in St. Joseph without good cause attributable to her work or to her employer. Because the commission failed to resolve the primary issue in the case, we reverse and remand.

McClellan worked for Brown Transfer and Storage as a packer. McClellan's supervisor, Robert Rosenthal, was the warehouse supervisor and dispatcher.

On August 11, 1993, Rosenthal asked for volunteers to pack items at two flooded plants. Rosenthal told the employees that they would be paid one-and-one-half times their hourly rate if they accepted the work. McClellan volunteered and worked on August 12 and 13, 1993, at the flooded plants. From August 16 through 19, 1993, McClellan worked at a warehouse in Wathena, Kansas, where flooded items had been transferred for packing. McClellan believed that she was to receive the increased rate of pay for those days, too.[1]

On August 20, 1993, McClellan received her paycheck for the work she had done at the flooded plants and at the warehouse and noted that she had not received increased pay for the work as promised. She notified Rosenthal about the problem, and he told her that he would talk to the bookkeeper and the company president and would take care of the problem. About a half-hour later McClellan again talked to her supervisor to see whether or not he had done anything to rectify the problem, and he told her that he had not.

McClellan left her employer's premises to drive to the job site where she was working. On her way there, she decided to return to the office and to resign. McClellan, along with her husband, confronted Rosenthal about the pay problem. Rosenthal summoned the company president, Steven Pitluck. McClellan told Pitluck that she was quitting because of the pay problem. Pitluck asked McClellan to sit down and to talk about the problem so he could straighten things out. McClellan refused.

McClellan testified at the hearing that she had been wrongfully deprived of increased pay approximately 10 times previously, beginning in 1991. She said that her efforts to resolve those problems were unsuccessful. This caused her to believe, she said, that she would be unsuccessful in resolving the issue on August 20, 1993, so she quit.[2]

McClellan filed a claim for unemployment compensation. She claimed that she had good cause attributable to her work or employer to quit her employment. A deputy with the Division of Employment Security decided that McClellan did not qualify for benefits. McClellan appealed to the division's appeals tribunal which affirmed the deputy's decision. McClellan then appealed to the commission which also affirmed.

McClellan appealed to the circuit court which reversed the commission's decision because the commission failed to fully develop the record.[3] The circuit court said:

[T]he record is insufficient to determine the entitlement of the claimant to overtime compensation on occasions prior to the flood related work referred to in the record and the nature of the steps taken by the claimant to resolve her problems with her employer before the day her employment ended, matters essential to a determination of the good faith of the claimant and the reasonableness of her actions.

The commission remanded the case to the appeals tribunal to complete the record. The appeals tribunal convened another hearing

1. Brown Transfer and Storage disagrees that McClellan was entitled to increased pay for the days she worked at the warehouse.

2. During cross-examination, McClellan was unable to recall specifically any past job where she was denied overtime pay except for one, "the Soren Haring job." Brown Transfer and Storage disagreed that McClellan was entitled to overtime for the Soren Haring job.

3. Section 288.210, RSMo 1994, gave the circuit court jurisdiction over judicial reviews of the commission's decisions. The General Assembly amended this statute in 1995 to give this court jurisdiction over such cases.

and sent the record to the commission so it could make the decision. The commission still concluded that McClellan was disqualified for benefits because she quit work voluntarily without good cause attributable to her work or employer. McClellan appeals to this court.

▮▮▮ In a case in which an employee voluntarily quits his or her job, § 288.050.1(1), RSMo 1994, makes good cause a condition precedent to receiving immediate unemployment compensation benefits. The statute says:

> Notwithstanding the other provisions of this law, a claimant shall be disqualified for . . . benefits until after he has earned wages for work insured under the unemployment compensation laws of any state equal to ten times his weekly benefit amount if the deputy finds:
>
> (1) That he has left his work voluntarily without good cause attributable to his work or to his employer[.]

"A worker has good cause to terminate employment voluntarily when that conduct conforms to what an average person, who acts with reasonableness and in good faith, would do." *Contractors Supply Company v. Labor and Industrial Relations Commission*, 614 S.W.2d 563, 564 (Mo.App.1981). *See also American Family Insurance Company v. Hilden*, 936 S.W.2d 207, 210–211 (Mo.App. 1996). The claimant bears the burden of proving good cause. *Id.*

▮ The question on appeal is not whether McClellan proved the right to overtime wages, but whether McClellan's decision to quit her job was reasonable and in good faith. *Id.* at 564–65. *See also Central Missouri Paving Company, Inc. v. Labor and Industrial Relations Commission*, 575 S.W.2d 889, 892 (Mo.App.1978). She was not obligated to prove a right to overtime wages. Her burden was to establish that her resigning was reasonable and in good faith.

The commission failed to deal with McClellan's theory for recovery. She said that her quitting was reasonable and in good faith because she had complained many times before about overtime pay and those complaints had been ignored. She said that when she was told on August 20, 1993, that the compa-

ny would look into her complaints she had no hope that management was doing anything more than putting her off once again.

Hence, a crucial issue in deciding this case was whether, in fact, McClellan had made previous complaints about overtime pay to her employer. The commission did not resolve the issue. In its findings of fact, the commission said:

> Claimant believed she would never be paid overtime for the flood-related work. She testified she had also been denied overtime pay on approximately ten prior occasions beginning in 1991 and her efforts to resolve those problems were never successful. Claimant believed this effort would also be unsuccessful. On cross-examination, claimant was unable to recall specifically any of the past jobs or how much she was not paid overtime when it was allegedly due. . . . She then conceded she has only a general belief she was denied overtime. . . . On all the prior occasions, claimant testified she only brought her concerns to her supervisor and never to management. Claimant admitted that she continued to work for employer for several years even though employer never paid claimant the overtime allegedly owed her on those ten previous occasions. . . .
>
> . . . .
>
> Claimant's supervisor provided the following testimony. Claimant (or anyone on her behalf) never talked to him about claimant's past problems with not being paid for overtime allegedly due.

The commission followed the circuit court's order to develop the record in regard to McClellan's entitlement to overtime and the nature of the steps taken by McClellan to resolve her problem with her employer, but it did not make any findings of fact or conclusions of law concerning this evidence. It merely recited the testimony provided by the witnesses. The commission's telling us that McClellan testified of making prior complaints about overtime does not resolve the issue of whether she did, in fact, make complaints. The commission commented, "On cross-examination, claimant was unable to recall specifically any of the past jobs or

how much she was not paid overtime when it was allegedly due.... She then conceded she has only a general belief she was denied overtime." This suggests that the commission may not have believed McClellan, but it does not tell us whether or not it did.

 The commission was obligated to make unequivocal, affirmative findings of the facts. *Fruehauf Division, Fruehauf Corporation v. Armstrong,* 620 S.W.2d 67, 69 (Mo. App.1981). The commission failed to meet its obligation.

Moreover, the commission's findings of fact emphasized that McClellan complained only to her supervisor as opposed to management. This is simply wrong. She said that she complained to her supervisor, Robert Rosenthal, but even Pitluck, the company president, acknowledged that Rosenthal was a member of management on whom Pitluck relied to take care of employee complaints as they arose. In light of these facts, we need not decide whether complaints to a supervisor should be deemed a complaint to management.

The commission's failure to address the issue of McClellan's prior complaints also created problems in the commission's conclusions of law. There, the commission focused only on the overtime issue as it pertained to McClellan's flood-related work and ignored the issue of McClellan's prior complaints about overtime pay generally. The commission relied on *Contractor's Supply,* 614 S.W.2d at 563, in deciding that McClellan had not fulfilled a duty to resolve her dispute with management before quitting. While this court said in *Contractor's Supply* that "the abrupt disseverance from employment, without prior effort to consult concerning the right of the matter, was unreasonable and not in good faith," *id.* at 565, we were speaking of the specific circumstances of that case. This is not to say that "abrupt disseverance" is not reasonable and in good faith in other circumstances. If McClellan had complained previously to Rosenthal about not being paid overtime and those complaints had gone unheeded, her abrupt resignation on August 20, 1993, *may* have been reasonable and in good faith.

We remand the case to the commission so it can resolve these unresolved issues. It shall determine whether or not McClellan's quitting was reasonable and in good faith in light of the facts and circumstances of her case.

BERREY, P.J., and SMART, J., concur.