**DOLGENCORP, INC. d/b/a Dollar General, Appellant,**

v.

**Donald ZATORSKI, Respondent pro se, Division of Employment Security, Respondent.**

**No. WD 62645.**

Missouri Court of Appeals, Western District.

May 28, 2004.

---

Rachel Heath Baker, Kansas City, for appellant.

Donald Zatorski, Fulton, respondent pro se.

Sharon A. Willis, Kansas City, for respondent.

Before NEWTON, P.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Donald Zatorski was discharged from his employment at Dolgencorp, Inc., d/b/a Dollar General, for violating its sexual harassment policy. He filed a claim for unemployment benefits under the Missouri Employment Security Law, Chapter 288, RSMo 2000.[1] Dolgencorp protested his claim, asserting that Mr. Zatorski was discharged due to misconduct related to his work. The Labor and Industrial Relations Commission found that Mr. Zatorski qualified for unemployment benefits because his conduct did not constitute misconduct and was only a lack of judgment. Dolgencorp appeals the Commission's decision, claiming that the facts found by the Commission do not support the award because the facts, including the admissions by Mr. Zatorski, show that he was guilty of misconduct when he violated Dolgencorp's policy on sexual harassment. Dolgencorp further claims that the decision that his conduct was not misconduct violates public policy against sexual harassment. For this court to conduct an intelligent review of the Commission's decision, there must be unequivocal, affirmative findings of fact that can be examined to determine if there is a reasonable basis for the Commission's decision. Because the Commission failed to make unequivocal, affirmative findings of fact, the decision of the Commission is reversed and the cause is remanded.

**Factual and Procedural History**

Mr. Zatorski began working for Dolgencorp on July 14, 1999. Upon being hired by Dolgencorp, Mr. Zatorski signed an agreement to abide by Dolgencorp's sexual harassment policy.[2] While working for

1. All references are to the Revised Statues of Missouri 2000.

2. Dolgencorp states in its brief that its policy's definition of prohibited conduct includes "conduct or remarks that are sexually suggestive" and "obscene or rude gestures."

Dolgencorp, Mr. Zatorski became a leader in organizing a union. Mr. Zatorski was very vocal with his efforts to organize the union and often wore shirts and buttons in support of his effort.

At a company-sponsored luncheon on September 5, 2002, Mr. Zatorski sat down at a table with his friend, Don Rich, and several other Dolgencorp employees. While they were eating, Mr. Zatorski selected a fried chicken leg to represent a union worker and a baked chicken leg to represent a non-union worker. Mr. Zatorski began telling a story with the chicken pieces to Mr. Rich. Mr. Zatorski discussed the good and bad qualities the chicken pieces possessed. Mr. Zatorski then grasped the baked non-union chicken leg with a strangling or choking motion and squeezed the chicken between both his hands. As he did this, he said he was "choking the chicken." Some co-workers seated at the table with Mr. Zatorski thought, from his gesture and comment, that he was demonstrating masturbation. Two or three employees reported this belief to the human resource manager, Diane Spieker.

Ms. Spieker took statements from a total of four employees who were at the table with Mr. Zatorski. These employees related their perceptions that the gesture and comment were sexual in nature. His gesture was characterized as an up-and-down motion with both hands around the chicken. Ms. Spieker then called Mr. Zatorski to her office to discuss the incident. Mr. Zatorski told Ms. Spieker that his actions at lunch represented union organizing and were not related to sexual activity. Mr. Zatorski asked Ms. Spieker to interview Mr. Rich, who was the person seated next to Mr. Zatorski at the lunch and with whom Mr. Zatorski was having the conversation about the chicken. Ms. Spieker declined to interview Mr. Rich and based her decision on the information received from the employees who thought Mr. Zatorski was referring to masturbation. Ms. Spieker then discharged Mr. Zatorski for misconduct based on a violation of Dolgencorp's zero-tolerance sexual harassment policy. Specifically, Ms. Spieker discharged Mr. Zatorski for engaging in an activity that simulated a sexual act, "gesturing with the chicken in such a way that it appeared to be masturbation."

After his termination, Mr. Zatorski filed for unemployment benefits. Dolgencorp protested his claim, asserting that he was fired for misconduct. A deputy from the Missouri Division of Employment Security determined that Mr. Zatorski was disqualified from receiving unemployment benefits for a period of eight weeks because he was discharged for misconduct connected with work. Mr. Zatorski appealed this determination.

An Appeals Tribunal held a telephone hearing to take evidence concerning whether Mr. Zatorski's discharge was for misconduct in connection with his work. At this hearing, Ms. Spieker was the only witness for Dolgencorp to testify. She testified that she received statements from four witnesses to the incident, two of whom came forward immediately after the incident. These two individuals were very offended by Mr. Zatorski's gesture and comment. Another individual who made a statement said that she dropped a chicken breast and when she commented that she was going to get another one, Mr. Zatorski said, "I like breasts." She understood, from the way he said it, that he meant he

Dolgencorp's policy is not in the record on appeal and does not appear to have been entered into evidence in the hearing before the Appeals Tribunal. The only evidence in the hearing is that Dolgencorp had a "zero-tolerance" sexual harassment policy.

liked human female breasts, not chicken breasts.

During the telephone hearing, Mr. Zatorski reiterated his story that he did not intend the chicken gesture and comment to be sexual. He was merely "taking a frustration out on the non-union chicken"; he did not like non-union chicken and was trying to show it. Mr. Zatorski denied making the statement that he liked breasts.

Mr. Rich also testified for Mr. Zatorski. He stated that he was sitting right next to Mr. Zatorski when the statements were made about the chicken. Mr. Rich testified that the other persons at the table "just kind of blew ... off" Mr. Zatorski's demonstration and changed the subject to something else. Mr. Rich also stated that the gesture with the chicken lasted only two to three seconds. Mr. Rich stated Mr. Zatorski did not simulate masturbation because "it wasn't like that. It wasn't a choke like that. It was a choke like a squeeze." Mr. Rich testified that no other comments were made about the chicken.

Rather than call an additional witness, Mr. Zatorski was permitted to testify that "sexual innuendos are the norm instead of the exception at the workplace to this day." Dolgencorp's enforcement of its zero-tolerance sexual harassment policy was by "sending a piece of paper around and having individuals sign it without additional training." He believed he was fired in retaliation for being a lead organizer in the union movement and to intimidate individuals from pursuing an organizational attempt.

The Appeals Tribunal gave Ms. Spieker an opportunity to add facts or details. She stated that one of the witnesses to Mr. Zatorski's gesture and comment reported that she had reacted immediately to the incident by shaking her head, getting up and leaving the table. Ms. Spieker then asked the Appeals Tribunal to consider the sworn statements of the witnesses to the incident and the documents signed by Mr. Zatorski acknowledging training on the zero tolerance sexual harassment policy, which had been sent to Mr. Zatorski and the Appeals Tribunal. Mr. Zatorski had not received the mailed documents prior to the telephone hearing, however. Since the documents had not been provided to Mr. Zatorski, the appeals referee did not allow the sworn statements or the documents signed by Mr. Zatorski to be a part of the record.[3]

When Mr. Zatorski was given the opportunity to add any additional information, he stated he understood that someone could construe his actions as sexual, but that it was not his intent at the time. Mr. Zatorski also acknowledged that he made a poor choice in the words he used. Nevertheless, he felt that Dolgencorp's refusal to investigate the claim fully before it took the severe step of firing him demonstrates its motive was less than honorable.

The Appeals Tribunal subsequently reversed the deputy's decision and held that Mr. Zatorski was not disqualified for benefits because he was discharged as a result of poor judgment, not for misconduct connected with his work. Dolgencorp appealed the decision. The Labor and Industrial Relations Commission affirmed the Appeals Tribunal's decision that Mr. Zatorski qualified for unemployment benefits and adopted it as the decision of the Commission. Dolgencorp filed this appeal.

### Standard of Review

An appeal of the Commission's decision in an unemployment compensation case is

---

**3.** Dolgencorp could have had the employees who witnessed Mr. Zatorski's statements testify during the telephone hearing. Dolgencorp did not do so.

governed by section 288.210. This statute provides, in pertinent part:

The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.

The Missouri Supreme Court recently clarified the approach the reviewing court is to take in determining whether the Commission's decision is supported by sufficient competent evidence in the record. In *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003),[4] the Supreme Court stated that "[w]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."

In so holding, the Court rejected the two-step approach outlined by this court in *Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995).[5] In overruling *Davis* and cases requiring the reviewing court to view the evidence and all inferences in the light most favorable to the award, the Court in *Hampton* held that "[t]he two *Davis* steps can be merged into a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award. This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Hampton,* 121 S.W.3d at 223.

■ In considering the whole record, this court defers to the Commission's determination as to the credibility of witnesses. *Dixon v. Div. of Employment Sec.,* 106 S.W.3d 536, 539–40 (Mo.App. 2003). This court does not defer to the Commission on issues of law, however. *Id.* at 540. "Rather, issues of law fall within the court's province of independent review and correction where erroneous." *Yellow Freight Sys. v. Thomas,* 987 S.W.2d 1, 3 (Mo.App.1998).

### Insufficient Findings of Fact

■ On appeal, Dolgencorp raises three claims of error. It claims that the Commission erred in determining that Mr. Zatorski's gesture and comment, which others perceived as being sexual in nature, were insufficient to prove misconduct. It

---

**4.** The Court in *Hampton* was interpreting and applying section 287.495.1, which governs the review of Commission decisions in workers' compensation cases. Nevertheless, because the standards of review in sections 287.495.1 and 288.210 are substantially similar and both concern review of Commission decisions, this court will apply *Hampton* in reviewing the Commission's decision in this employment security case.

**5.** In *Davis,* this court had stated that the reviewing court should first examine the record in the light most favorable to the Commission's decision, disregarding all contrary evidence and inferences, to determine whether the decision was supported by competent and substantial evidence. *Id.* If so, in the second step, this court stated that the reviewing court is to review the entire record, including all contrary evidence and inferences, to determine whether the Commission's decision was against the overwhelming weight of the evidence. *Id.*

further claims that Mr. Zatorski's admission that the conduct was inappropriate because it could be perceived by others to be sexual in nature was also sufficient to prove misconduct, and the Commission's decision to the contrary was erroneous. Finally, it claims that, in light of the Commission's finding that Mr. Zatorski's gesture and comment were perceived by witnesses to be sexual in nature, its decision that such conduct was insufficient to prove misconduct violates public policy against sexual harassment.

Inherent in each of these assertions of error is Dolgencorp's belief that the relevant issue is whether others perceived Mr. Zatorski's gesture and comment as inappropriately sexual in nature, not what Mr. Zatorski intended when he made the gesture and comment. That is not a correct understanding of the legal requirements for misconduct. Mr. Zatorski may have violated Dolgencorp's sexual harassment policy resulting in discharge, yet still qualify for unemployment compensation if his conduct is not proven to rise to the level of misconduct. "Although an employee's actions may be grounds for termination, they may not be grounds for denying compensation under section 288.050.2." [6] *Dixon*, 106 S.W.3d at 540–41.

■ For behavior of an employee to qualify as misconduct, such that it would disqualify the employee from unemployment benefits, the behavior must fall within the definition of "misconduct." Actions constituting "misconduct" include:

"[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disre-

gard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or the employee's duties and obligations to the employer."

*City of Kansas City v. Arthur*, 998 S.W.2d 870, 873 (Mo.App.1999) (quoting *Sain v. Labor & Indus. Relations Comm'n*, 564 S.W.2d 59, 62 (Mo.App.1978)).

In each alternative way in which an employee can engage in misconduct, there is the requirement that the employee willfully violate the rules or standards of the employer. It is not sufficient that other employees perceive that the actions of the employee are contrary to the employer's rules. The violations must be intended. *See Dixon*, 106 S.W.3d at 542 (holding employer must prove claimant deliberately made mistakes to constitute misconduct).

■ Although an employee has the burden of proving entitlement to unemployment benefits generally, where an employer claims that an employee was discharged for misconduct, the employer has the burden of proving misconduct by competent and substantial evidence that the employee violated a reasonable work rule. *Arthur*, 998 S.W.2d at 874.

Here, for Mr. Zatorski to have committed misconduct, he had to have deliberately violated Dolgencorp's rules or standards of behavior prohibiting sexual harassment. At issue is the nature of the rules or requirements of Dolgencorp regarding

---

**6.** Section 288.050.2 states:

Notwithstanding the other provisions of this law, if a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant, depending upon the seriousness of the mis-

conduct as determined by the deputy according to the circumstances in each case, shall be disqualified for waiting week credit or benefits for not less than four nor more than sixteen weeks for which the claimant claims benefits and is otherwise eligible.

sexual harassment. Ms. Spieker characterized Dolgencorp's policy regarding sexual harassment as a zero-tolerance policy, but no documents were in the record with the actual sexual harassment policy. Mr. Zatorski testified that Dolgencorp did not enforce a zero-tolerance sexual harassment policy and permitted sexual innuendoes to be made on a regular basis, without consequence.

There is also the question of whether Mr. Zatorski made a statement about liking human female breasts. Although he was not dismissed for making a statement about breasts, whether he did so is relevant to determining whether he intended his gesture and comment regarding choking the chicken to be sexual in nature. Ms. Spieker testified that a witness to the event heard Mr. Zatorski say he liked breasts and his manner in making the statement indicated to her that he was referring to human female breasts. Mr. Zatorski and Mr. Rich denied that such a statement was made.

Additionally, there is a factual dispute as to whether Mr. Zatorski intended his gesture and comment to be solely about the merits of union versus non-union employees or whether he intended them to be sexual in nature. Mr. Zatorski and Mr. Rich testified the gesture and comment were not intended to be sexual. There was evidence, however, that four employees at the table with Mr. Zatorski perceived the comments to be sexual in nature. A reasonable inference from this evidence is that the comment and gesture were intended to be sexual.

The resolution of these factual issues is necessary to determine whether Mr. Zatorski committed misconduct. Unfortunately, the Commission's findings of fact do not provide such a resolution. In determining whether Mr. Zatorski was disqualified from receiving unemployment benefits, the Commission made its findings of fact in two paragraphs. The Commission found:

> The claimant worked for the employer about three years. He was a yard jockey when he last worked for the employer on September 6, 2002.
>
> While at lunch on September 5, 2002, the claimant chose a fried chicken leg to represent a union worker and a baked chicken leg to represent a non-union worker. The claimant grasped the baked chicken leg with both hands and said he was choking the chicken. Certain workers in the area of the claimant reported the incident and their belief that the claimant's representation was of a sexual nature. As a result of that incident the claimant was discharged on September 6, 2002.

These findings by the Commission did not determine what sexual harassment policies or practices of Dolgencorp governed Mr. Zatorski's conduct as an employee of Dolgencorp. Nor did the Commission make findings on the issues of whether Mr. Zatorski's comments included the statement that he liked breasts and what he intended in making the gesture and comment about choking the chicken.

■ Section 288.200 provides that the Labor and Industrial Relations Commission "shall promptly notify the parties of its decision and its reasons therefor." In its decision, the Commission is required "to make unequivocal, affirmative findings of fact." *McClellan v. Brown Transfer & Storage Co.*, 950 S.W.2d 704, 707 (Mo.App. 1997). While "[t]he decision need not be in any particular form, [it] must provide for intelligent review of the decision and reveal a reasonable basis for the Commission's decision." *Garden View Care Ctr., Inc. v. Labor & Indus. Relations Comm'n*, 848 S.W.2d 603, 607 (Mo.App. 1993). There cannot be intelligent review

of the decision when the Commission fails to address essential factual issues, and its decision must be reversed and the cause remanded so that the Commission can resolve the essential issues. *See McClellan,* 950 S.W.2d at 706–07.

Because the Commission did not resolve all of the disputed factual issues, it is not possible to conduct a meaningful review of the Commission's decision in this case. Without resolution of all the factual issues, it is impossible to determine whether Mr. Zatorski's conduct fell within the definition of misconduct or whether it was merely "poor judgment," as the Commission determined.

The decision of the Commission is reversed and the cause is remanded so that the Commission may enter unequivocal, affirmative findings on all disputed factual issues.

All concur.