**Darwin HOLLY, Appellant,**

v.

**TAMKO BUILDING PRODUCTS, INC., and Missouri Division of Employment Security, Respondents.**

**No. SD 30138.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 16, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 6, 2010.

Application for Transfer Denied Sept. 21, 2010.

---

James D. McNabb of Springfield, MO, for Appellant.

Virginia L. Fry of Springfield, MO, for Respondent, TAMKO.

Rachel M. Lewis, Bart Matanic, Jefferson City, MO, for Respondent Employment Security.

WILLIAM W. FRANCIS, JR., Judge.

Darwin Holly ("Appellant") appeals a decision by the Labor and Industrial Relations Commission ("Commission") denying him unemployment benefits. The Commission found that a comment by Appellant that he was eating "Obama fruit" while holding a slice of watermelon at the company picnic of his employer, TAMKO Building Products, Inc. ("TAMKO"), violated TAMKO's racial harassment policy; therefore, it amounted to misconduct related to work disqualifying him for unemployment benefits. We affirm the Commission's decision.

### Factual and Procedural History

On September 3, 1993, Appellant began his employment with TAMKO. On May 29, 2009, Appellant attended a company picnic at the company plant. He sat down by several co-workers with a slice of watermelon and said, "I'm going to sit down and eat my 'Obama fruit.' " One co-worker stated that he "shook [his] head and said something to the effect of, 'That isn't right.' " Appellant continued talking to the three co-workers for several minutes and then left.

On June 8, 2009, Appellant's employment with TAMKO was terminated. According to TAMKO's "Exit Interview" form, Appellant was terminated for "Misconduct/Rule Violation." This form also indicated that Appellant acknowledged that the information contained in it was correct.

On June 10, 2009, Appellant filed a claim for unemployment benefits with the Missouri Division of Employment Security ("Division"). TAMKO filed an official protest to Appellant's claim. TAMKO asserted that Appellant was "not eligible for unemployment benefits because he was discharged for misconduct connected with his work." TAMKO filed with its protest a copy of its "PREVENTION OF HARASSMENT POLICY", which stated that "no form of harassment should be present in the workplace." The policy defined racial harassment to include "making racially derogatory jokes, comments or displaying or possessing racially derogatory or offensive symbols, emblems, writings or other documents on TAMKO property or while conducting TAMKO business where such conduct interferes with a person's work performance or creates an intimidating, hostile or offensive working environment." Also attached were forms signed by Appellant indicating that he completed refresher training on TAMKO's

policies in 1999, 2002, 2005 and 2006. The protest also contained a copy of the exit interview signed by Appellant, where he acknowledged that he was fired for violation of the harassment policy.

A deputy with the Division determined that Appellant was disqualified from receiving unemployment benefits because Appellant was discharged for violation of TAMKO's harassment policy. Appellant filed a "REQUEST FOR APPEAL OR RECONSIDERATION" to the Division's Appeals Tribunal. The Appeals Tribunal held a hearing. TAMKO submitted two exhibits which were written statements made by two other TAMKO employees who heard Appellant's comment. The first statement, by Matt Parrish, recited that he was preparing food for a company picnic when Appellant asked if he could sit down by him. Parrish answered in the affirmative and then Appellant said, "I'm going to sit down and eat my 'Obama fruit.' " Parrish asked Appellant if he had said "Obama fruit," and Appellant answered in the affirmative. Parrish then "shook [his] head and said something to the effect of, 'That isn't right.' . . . [Appellant] then told a story regarding antique cars and left a few minutes later." The second statement, by Larry W. Prewitt, Jr., also stated that Appellant sat down and said "Obama fruit." Prewitt stated further that "[n]othing was mentioned about the comment until Monday when [Parrish] asked me if I heard any derogatory comments from [Appellant] on the previous Friday at which point I confirmed that I had heard the statement." The Appeals Tribunal also heard testimony from Appellant and Bennett Cole Williams, TAMKO's Human Resources Manager. Williams testified that the term "Obama fruit" was a racially derogatory comment, and Appellant's use of the term violated TAMKO's policy against racial harassment. Appellant testified that

he did make the comment "Obama fruit," but stated that "in my mind I was calling the president a melon head, no reference to racial whatsoever, I'm not a racist, but it was just a political statement in my mind." The Appeals Tribunal upheld the Division's ruling and reached the following conclusion:

> The claimant made a comment that he was going to eat 'Obama fruit.' The term 'Obama fruit' taken alone is not a racially derogatory comment. But, the comment was made while the claimant was eating a slice of watermelon at a company sponsored cookout at the plant. In that setting, the claimant's comment violated the employer's policy. Therefore, the claimant committed misconduct which resulted with the termination of his employment.

Appellant then filed an Application for Review with the Commission. The Commission affirmed the decision of the Appeals Tribunal and "adopt[ed] the decision of the Appeals Tribunal as the decision of the Commission in this matter."

Appellant's sole point relied on alleges that there was insufficient evidence to support the Commission's decision that Appellant was disqualified from receiving unemployment benefits because he was terminated for misconduct.

## Standard of Review

The Commission's decision can only be modified, reversed, remanded or set aside on appeal on one of the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. . . .

Section 288.210.[1] Appellant's challenge confines our review to the ground set forth in section 288.210(4).

## Analysis

Generally, a person claiming unemployment benefits is not eligible to receive those benefits "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work. . . ." Section 288.050.2.

Section 288.030.1(23) provides the following definition for "misconduct":

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

 "Where an employer alleges the employee was fired for misconduct, the employer bears the burden of demonstrating misconduct by a preponderance of the evidence." *Ahearn v. Lewis Cafe, Inc.,* 308 S.W.3d 294, 297 (Mo.App. E.D.2010). Our review for misconduct is both a question of fact and law. We defer "to the Commission's resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and witness credibility"; however, "[w]hether a claimant's conduct is considered misconduct in connection with his work is a legal question to which we do not defer to the Commission's determination." *Guccione v. Ray's Tree Ser-*

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

vice, *302 S.W.3d 252, 256 (Mo.App. E.D. 2010) (internal citation omitted).*

■ "The violation of a reasonable work rule can constitute misconduct." *Rapid Roberts, Inc. v. Potter,* 125 S.W.3d 395, 397–98 (Mo.App. S.D.2004). In this case, TAMKO's "PREVENTION OF HARASSMENT POLICY" qualifies as a reasonable work rule because harassment in the employment setting is prohibited in Missouri.

Appellant relies on *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813 (Mo.App. W.D. 2004), for the proposition that a third person's perception of an act is not enough to prove intent. Zatorski was terminated "for violating [Dolgencorp's] sexual harassment policy." *Id.* at 814. Zatorski signed an agreement that he would "abide by Dolgencorp's sexual harassment policy." *Id.* Zatorski sought to organize a union. *Id.* at 815. At a lunch provided by the company, Zatorski decided to complete a demonstration and "selected a fried chicken leg to represent a union worker and a baked chicken leg to represent a non-union worker." *Id.* At some point, Zatorski "grasped the baked non-union chicken leg with a strangling or choking motion and squeezed the chicken between both his hands. As he did this, he said he was 'choking the chicken.'" *Id.* Several employees complained that this act was sexual in nature because it referred to masturbation; Zatorski was fired for violation of Dolgencorp's sexual harassment policy. *Id.* The Appeals Tribunal ruled that Zatorski's action did not rise to the level of misconduct and found that he was not disqualified for benefits and Dolgencorp appealed. *Id.* at 816. The Court recognized that "Zatorski may have violated Dolgencorp's sexual harassment policy resulting in discharge, yet still qualify for unemployment compensation if his conduct is not proven to rise to the level of misconduct." *Id.* at 818. The Court also stated

that "[i]t is not sufficient that other employees perceive that the actions of the employee are contrary to the employer's rules. The violations must be intended." *Id.* The Court noted that "no documents were in the record with the actual sexual harassment policy." *Id.* at 819. The Court also noted that the Commission did not "make findings on the issues of whether Mr. Zatorski's comments included the statement that he liked breasts and what he intended in making the gesture and comment about choking the chicken." *Id.* The Court then reversed the finding of the Commission because it "did not resolve all of the disputed factual issues. . . ." *Id.* at 820.

In this case, unlike *Zatorski,* there was a copy of TAMKO's harassment policy in the record, the Commission did not rest its conclusion solely on the perception that others concluded Appellant's comment violated the rules, and there are no unresolved factual issues. Here, the Commission resolved the factual dispute regarding Appellant's intent. The Commission found that he admitted to making the comment regarding "Obama fruit." The Commission found that he did so while eating a slice of watermelon. Thus, the Commission concluded that the comment violated TAMKO's racial harassment policy in the context in which it was made.

These facts are more closely akin to those recited in *Ernst v. Sumner Group, Inc.,* 264 S.W.3d 669 (Mo.App. E.D.2008) and *Acord v. Labor and Indus. Relations Comm'n,* 607 S.W.2d 174 (Mo.App. S.D. 1980). In *Ernst,* Sumner Group had a policy that prohibited employees from sending "any material or information of a personal, frivolous, sexual, or similar nature." *Ernst,* 264 S.W.3d at 670. Sumner Group discovered that Ernst had sent "emails containing graphic sexual content and racially derogatory materials . . ." in

violation of its policy. *Id.* at 670–71. Ernst was terminated, and the Deputy "determined that Ernst was disqualified for unemployment benefits because he was discharged for misconduct connected with work." *Id.* at 671. The Commission reversed the Deputy's decision. *Id.* The Court found that the policy was reasonable and the "violation was deliberate as Ernst signed an acknowledgement form indicating his awareness of the policy and its restrictions, yet he sent the materials anyway." *Id.* at 672. The Court reversed the Commission's decision and reinstated the Deputy's determination that Ernst was disqualified from receiving unemployment benefits. *Id.* at 673.

In *Acord,* Acord was called into her supervisor's office and at some point "lost her temper and called her supervisor a motherfucker." *Acord,* 607 S.W.2d at 175. The Commission found that Acord had made an obscene remark, which constituted misconduct. *Id.* As a result, Acord was denied unemployment benefits. *Id.* Acord challenged the Commission's findings as not supported by substantial evidence. *Id.* Acord argued "that such language has been held not to be obscene." *Id.* at 175–76. The Court responded that the Commission did not have to decide if the term was legally obscene or whether she had a right to say it. *Id.* at 176. The Commission only had "to decide if, in the situation and context said, its use was misconduct." *Id.* The Court found there was evidence to support the Commission's finding of misconduct and affirmed its decision. *Id.*

Like the employee in *Ernst,* Appellant signed several acknowledgements over the course of his employment that he was aware of TAMKO's harassment policy and its restrictions. Appellant admits that on his own volition, he made the comment that he was eating "Obama fruit" in reference to the slice of watermelon he was eating. Furthermore, he signed his exit interview form and acknowledged as correct the fact that he was being terminated for "Misconduct/Rule Violation" of TAMKO's harassment policy. Like the Commission's role in *Acord,* here the Commission did not have to determine that the phrase "Obama fruit" would be racial harassment in all circumstances, but only had to determine if it constituted racial harassment in this situation and context. Appellant's point is denied.

The judgment of the Commission is affirmed.

LYNCH, P.J. and RAHMEYER, J., CONCUR.