**Nathan NEVETTIE,
Claimant/Appellant,**

**v.**

**WAL–MART ASSOCIATES,
INC., Employer,**

**and**

**Division of Employment Security,
Respondent/Respondent.**

**No. ED 95100.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 22, 2011.

Grant R. Doty, The Law Firm of GR Doty, St. Louis, MO, for appellant.

Kristen Frazier, St. Louis, MO, Pro se.

Shelly A. Kintzel, Jefferson City, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Claimant, Nathan Nevettie, appeals from the Order of the Labor and Industrial Relations Commission (the Commission), with one member dissenting, affirming the decision of the Appeals Tribunal (the Appeals Tribunal) of the Division of Employment Security (the Division) finding claimant disqualified from unemployment benefits. The Commission determined that claimant was disqualified from unemployment benefits because claimant's employment was terminated for misconduct connected with work within the meaning of Section 288.050.2 RSMo (Cum.Supp. 2006).[1] We reverse and remand.

Claimant was employed in the maintenance department for Wal–Mart Associates, Inc., (employer) from September 4, 2008, to September 4, 2009. Claimant's primary duties were cleaning and maintaining the facilities. On September 4, 2009, claimant made a rude comment to a manager of another department, and later in her presence, he made a disgusting motion. Claimant was discharged that day. Claimant filed a claim for unemployment benefits, and employer filed a letter of protest.

The Division issued a deputy's determination that claimant was not disqualified from receiving unemployment benefits because claimant was not discharged for misconduct connected with work. Employer appealed the deputy's determination to the Appeals Tribunal. The Appeals Tribunal conducted a telephone hearing on January 27, 2010, and on April 2, 2010. At the hearing, claimant testified on his behalf. Karen Horn, a department manager for

shoes, infants, jewelry and accessories, and Carol Kraft, assistant store manager, testified on behalf of employer.

Ms. Horn testified that on September 4, 2009, she saw claimant in the maintenance department supply room when she was going to the nearby shoe department stock area. She asked claimant how his day was going, and he "just kind of real off the wall he said just you disgust me." A few minutes later, she saw him putting away cases of toilet paper and paper towels, and she commented that the store had finally received paper towels. Claimant replied, "yeah, yeah, yeah, we did and that it's a good thing because so now we-now the people don't have to do this," and he then made a demonstration with his hand, which Ms. Horn characterized as a "very rude gesture." At that point, Ms. Horn left the room. She did not say anything more because claimant had made two "very unprofessional" comments, and she did not want to engage in further conversation. Later in the day, she informed her shift manager of the incident. The shift manager told Ms. Horn that claimant's conduct was "inappropriate," and she would "take care of it." Ms. Horn testified that she did not consider claimant's comment a threat, rather, she gave him the benefit of a doubt, which is why she talked to him again.

Ms. Kraft testified that she met with claimant to discuss the incident that had occurred with Ms. Horn. Ms. Kraft testified that she "explained to [claimant] that his actions required a coaching and that in lieu of the fact that he had already been coached previously, he was out of coachings, and at the next step of coaching is a termination."[2] Employer discharged claimant that day.

---

1. All further statutory references will be to RSMo (Cum.Supp.2006), unless otherwise indicated.

2. Employer's documents in the record indicated that claimant had received "coaching" on three previous occasions as part of employer's "Coaching for Improvement" pro-

Claimant denied that he made the statement or the gesture. He testified that Ms. Horn told him he was discharged for "bad humor." He further testified that Ms. Kraft informed him that "it has come to our knowledge that you have kind of joked with an[ ] employee inappropriately and since I can't coach you for that, the next step is termination."

Following the hearing, the Appeals Tribunal reversed the deputy's determination, finding that claimant was disqualified from receiving unemployment benefits because his employer discharged him on September 4, 2009, for misconduct connected with work. Its findings of fact were limited to a finding that employer's testimony that claimant had made the remark and the gesture was more convincing than claimant's testimony and a finding that claimant was discharged for making the remark and gesture. It concluded that claimant's conduct was "a disregard of the standards of behavior the employer had a right to expect of the claimant." Claimant filed an Application for Review with the Commission, which affirmed the decision of the Appeals Tribunal, with one member dissenting.

Claimant raises two points on appeal. In both points he challenges the Commission's determination that he was discharged for misconduct connected with work.

When we review a Commission's order, "[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210 RSMo (2000); *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). We may modify, reverse, remand for rehearing, or set aside a decision of the Commission on the following grounds and no other: (1) the Commission acted without or in excess of its powers; (2) the Commission's decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo (2000). We defer to the Commission's resolution of witness credibility and findings of fact. *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App.2008).

Although we defer to the Commission on issues of fact when the findings are supported by competent and substantial evidence, we review questions of law *de novo*. *Id.* Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law. *Id.*

The Commission determined that claimant was discharged for misconduct connected with work because his conduct constituted a disregard of the standards of behavior the employer had a right to expect of claimant. Section 288.050.2 provides:

> If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits....

"Misconduct" is defined by section 288.030.1(23) as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the

gram, twice related to the timely performance of his cleaning duties, and once related to his absences from work.

employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.[3]

We have explained:

"The statutory term 'misconduct' should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception."

*Continental Research,* 708 S.W.2d at 750 (quoting 76 AM.JUR.2D *Unemployment Compensation* § 52 (1975)).

 "With regard to each of these ways 'in which an employee can engage in misconduct, there is the requirement that the employee willfully violate the rules or standards of the employer.'" *Hoover v. Community Blood Center,* 153 S.W.3d 9, 13 (Mo.App.2005) (quoting *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 818 (Mo.App.2004)). A finding that a claimant committed an act of misconduct must be supported with evidence that the claimant "'deliberately or purposefully erred.'" *TAMKO Bldg. Products, Inc. v. Frankoski,* 258 S.W.3d 575, 578 (Mo.App. 2008) (quoting *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 621 (Mo.App.2007)). A lack of judgment does not disqualify a claimant from receiving unemployment benefits on the basis of

'misconduct.' *Hoover,* 153 S.W.3d at 14; *TAMKO,* 258 S.W.3d at 578. " 'There is a 'vast distinction' between the violation of a rule that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him [or her] for unemployment compensation benefits.'" *Hoover,* 153 S.W.3d at 13 (quoting *McClelland,* 116 S.W.3d at 664 (citations omitted)).

 The employee bears the burden to prove that he or she is entitled to benefits. *Hoover,* 153 S.W.3d at 13; *TAMKO,* 258 S.W.3d at 578. However, when the employer claims that an employee was discharged for misconduct, the burden shifts to the employer to prove that the employee was discharged for misconduct connected with work. *Hoover,* 153 S.W.3d at 13; *TAMKO,* 258 S.W.3d at 578.

The Division argues that claimant's insulting and offensive language toward another employee is a disregard of the behavior an employer may expect from its employees and that claimant's intent to disregard employer's expectations is demonstrated by his engagement in that conduct. The Division relies on *Holly v. TAMKO Bldg. Products, Inc.,* 318 S.W.3d 284, 289 (Mo.App.2010); *Simpson Sheet Metal v. Labor & Indus. Rel.,* 901 S.W.2d 312, 314 (Mo.App.1995); *Acord v. Labor and Indus. Relations Commission,* 607 S.W.2d 174, 176 (Mo.App.1980). These cases are all distinguishable.

In *Holly,* the employee made a racially offensive statement to a coworker in violation of an express provision of the employ-

---

**3.** This definition was added to the statute in 2006. It codifies the definition of misconduct set out in 76 AM.JUR.2D *Unemployment Compensation* § 52 (1975), that Missouri Western District courts had previously used. *See, e.g., McClelland v. Hogan Personnel, LLC,* 116 S.W.3d 660, 664 (Mo.App.2003); *Pemiscot Hosp. v. Missouri Labor & Ind.,* 897 S.W.2d 222, 225 (Mo.App.1995); *Continental Research v. Labor & Indus. Rel.,* 708 S.W.2d 749, 750 (Mo.App.1986).

er's racial harassment policy. The policy was in the record. The employee signed several acknowledgements over the course of his employment indicating that he was aware of the policy and had completed four refresher training courses on the policy. The employee also admitted that he made the statement. The court affirmed the Commission's finding that the employee had engaged in misconduct by violating a reasonable workplace rule and that the conduct constituted harassment in the situation and context in which it was made. 318 S.W.3d at 288–89. In *Simpson*, the employee called the company president an obscene name and made threats of destruction and violence, which the employee at least partially admitted. The court held that this was a disregard of the standard of behavior that the employer had a right to expect. 901 S.W.2d at 314. In *Acord*, the employee was called into her supervisor's office to be questioned about an allegation of misconduct. She lost her temper and called her supervisor a name. The court held that, in the manner used, the word was offensive and vulgar. 607 S.W.2d at 176. The court further held that a person using the word in the manner claimant used it could anticipate a real possibility of being fired. *Id.* It determined that the claimant's conduct in a working environment was not reasonable and constituted a disregard of the standard of behavior that an employer had a right to expect. *Id.*

In contrast to the cases described above, in this case employer did not produce evidence that it had a policy on offensive language or conduct. The first comment was rude and disrespectful, but it was not vulgar or obscene. Neither the comment nor the subsequent gesture, was accompanied by aggressive or angry behavior. Although the gesture was disgusting, it was not confrontational.

In this case, we are more aptly guided by *Hoover*, 153 S.W.3d at 13. In *Hoover*, the employee, a donor care technician/phlebotomist, made insensitive and inappropriate comments to a blood donor about the donor's upcoming surgery. The Commission denied benefits on the ground that the employee had been terminated for misconduct connected with work. The court of appeals reversed. It framed the issue as follows:

> Appellant obviously intended to make the comments to the donor and those statements could certainly be viewed as insensitive and inappropriate. The issue, however, is whether Appellant intended to disregard the standard of behavior her employer had the right to expect from her in making those statements.

*Id.* at 14. The court recognized that the Commission was not required to accept the employee's testimony explaining the remarks as credible. *Id.* However, it also recognized that the Division never asserted that the employee's comments were the result of anything more than a lack of judgment or identified any evidence that would support such a conclusion. *Id.* It concluded:

> The evidence simply does not support a determination that Appellant's comments were the result of anything more than simple lack of judgment and, therefore, does not establish that Appellant intentionally disregarded the standards of behavior that her employer had the right to expect of its employees. Accordingly, the Commission erred in finding that this behavior constituted "misconduct" under § 288.050.2.

*Id.* at 15; *see also TAMKO*, 258 S.W.3d at 578–79 (upholding Commission's determination that claimant's use of "heated" words with direct supervisor, who did not testify he felt threatened, demonstrated

poor judgment but was not the type of willful misconduct that would disqualify him from receiving benefits).

Claimant used poor judgment in making a rude remark to and a disgusting demonstration in the presence of another employee. This conduct may have been sufficient to discharge claimant from employment under employer's "coaching" program. However, as in *Hoover*, the evidence does not support a determination that claimant's comment and gesture were the result of anything more than simple lack of judgment. It does not establish that claimant intentionally disregarded the standards of behavior that employer had the right to expect. The Commission erred in finding claimant's behavior constituted misconduct under section 288.050.2. Points one and two are granted.

*Conclusion*

The order of the Commission is reversed, and the case is remanded.

GLENN A. NORTON, P.J. and GEORGE W. DRAPER III, J., concur.